## Richmond

HOWARD EDWARD SMITH v. COMMONWEALTH OF VIRGINIA.

June 11, 1976.

Record No. 750974.

Present, All the Justices.

*Henry A. Whitehurst* (*Gillis, Whitehurst & Obenshain*, on brief), for plaintiff in error.

*Jim L. Chin, Assistant Attorney General* (*Andrew P. Miller, Attorney General*, on brief), for defendant in error.

Per Curiam.

Indicted for the murder of Willy Lowery, Howard Edward Smith was convicted by a jury of voluntary manslaughter and was sentenced in accordance with the verdict to serve five years in the penitentiary. The trial court overruled defendant's motions to strike, and under the errors assigned, the sole question preserved on appeal is whether the evidence was sufficient to identify defendant as the criminal agent.*

---

\* At trial, defendant objected to admission of prior inconsistent statements of prosecution witnesses on the ground that such statements were incompetent as sub-

On the afternoon of June 15, 1974, Lowery, who had been drinking heavily, began brandishing a .38-cal. revolver in the presence of several patrons of Burrell Morgan's restaurant in Christiansburg. Lowery, a black man, stated that he intended to "kill him a damn nigger before dark." Flourishing his weapon, he shot at the feet of one witness to make him "buck dance". He also "shot toward Howard [Smith] three times at the ground." In the course of the shooting, a car owned by Josephine Smith, defendant's sister-in-law, was struck by flying gravel. Later in the afternoon, Mrs. Smith purchased a 12-gauge shotgun and shells and placed them in the back seat of her car. She said that she bought the weapon for her husband to "hunt groundhog".

Mrs. Burrell Morgan testified that sometime after 7:00 p.m., she saw Lowery standing in the restaurant, staring through the window at defendant outside, pointing a gun at him. When she went out to protest, defendant told her that "if you don't bring [Lowery] out I'll come in there and kill him." She further said that, after her husband called the police, Lowery came out "with his hands straight up and said, 'Here I am, kill me, kill me if you're going to kill me'" and defendant "picked the gun up to draw it like he was going to shoot him".

Burrell Morgan testified that he first saw defendant "standing in front of my place of business with a gun, a rifle or shotgun"; that he "was walking back and forth in front of the place like he was awfully angry"; that he "raised the rifle and took aim at [Lowery]"; and that when the officers arrived, "he dropped the rifle down" and entered Josephine Smith's car. Finding no firearms, the officers made no arrest. The crowd dispersed, and Lowery went to Campbell Town, a nearby social center.

About 8:00 p.m., defendant, his brother, and his sister-in-law applied for a warrant for Lowery's arrest. Told that no arrest could be made because no gun had been found on Lowery, defendant, described as "upset", stated, "Well if he pulls the gun on me again, that you'll find both him and the gun on the ground." Twice during the 20-minute conversation with the officers, he repeated that statement.

Josephine Smith testified that, a few minutes later, she drove to

stantive evidence. Because the defendant requested no limiting instruction and assigned no error to the trial court's ruling admitting this evidence, we will not notice this question on appeal. Rule 5:7. However, in reaching our decision on the question preserved, we disregard the prior inconsistent statements and consider only the statements of the witnesses at trial.

Campbell Town where she saw Lowery "standing at the corner of the building"; that Lowery had "a gun in his hands"; and that she heard defendant say, "Willy drop that gun". While she said that she heard the fatal shot, she denied that she saw defendant with a weapon.

Darrell Callaway testified that he saw defendant get out of Mrs. Smith's car when it arrived at Campbell Town; that he did not hear defendant speak to Lowery; and that while he "heard a gunshot", he "just pulled out" in his car and never saw defendant with a shotgun.

Responding to a call received at 8:48 p.m., the police officers found Lowery dying of a shotgun wound in his chest. Interrogating the bystanders, they were unable to locate an eyewitness to the shooting. Hearing a noise in the bushes near the building, the officers spotted defendant with a flashlight as he attempted to "jump behind a tree". Defendant told the officers that he had gone into the bushes "to use the restroom". Although told to remain at the scene for further interrogation, defendant left and could not be located by police until arrested in New Jersey some two months later.

Evidence, although wholly circumstantial, is sufficient to establish criminal agency if it proves "beyond a reasonable doubt that motive, time, place, means and conduct concur in pointing out the accused as the perpetrator of the crime." *Patler* v. *Commonwealth*, 211 Va. 448, 457, 177 S.E.2d 618, 624 (1970).

Under the trial court's instructions defining the elements of the several grades of unlawful homicide and a justifiable killing in self-defense, the jury found defendant guilty of voluntary manslaughter. From the evidence before it, the jury could have concluded that the motive for the crime was a passion for vengeance, a motive distinct from the fear that prompts but justifies a killing in self-defense. That evidence indicated that defendant was humiliated and enraged by Lowery's provocative conduct. Shortly after Lowery shot at defendant, defendant's sister-in-law purchased a shotgun, a firearm seldom used to "hunt groundhog". Defendant confronted Lowery with a shotgun and withdrew only when interrupted by the officers. Frustrated in his attempt to get a warrant for Lowery's arrest, he pursued him to Campbell Town and confronted him again. We believe that the jury's conclusion that defendant was motivated by passion rather than fear for his own safety is fully supported by the evidence.

The evidence is also ample to show that defendant was present at the time and place of the crime with ready access to the means by

which it was committed, and the "inference[s] fairly deducible from the *conduct* of the accused", *Payne* v. *Commonwealth*, 216 Va. 265, 272, 217 S.E.2d 870, 876 (1975), including his verbal and physical threats, his deportment at the scene of the crime, and his flight from the jurisdiction, concur in supporting the jury's finding that defendant was the criminal agent.

*Affirmed.*