**Carson Alvin JONES, # 106449, Petitioner,**

**v.**

**W. D. BLANKENSHIP, Superintendent, Respondent.**

**Civ. A. No. 78–0048(A).**

United States District Court, W. D. Virginia.

Sept. 6, 1978.

522

Alan Katz, Asst. Atty. Gen., Richmond, Va., for defendant.

Carson Alvin Jones, pro se.

## MEMORANDUM OPINION

TURK, Chief Judge.

 Petitioner, Carson Alvin Jones, maintains that he is being held pursuant to a judgment of conviction which was obtained in violation of the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution made applicable to the states by the Fourteenth Amendment. On December 22, 1974, Mr. Jones was charged with the murder of Billy Hugh Sutphin and the malicious wounding of Jarel Lee Gillispie, as a result of a shooting incident on that date, in which they were both shot from a single shotgun blast. Petitioner was tried first on the murder charge. At that trial he maintained that he shot Sutphin and Gillispie in self-defense. The Commonwealth's evidence, however, was to the effect that the decedent was a bystander who was killed when petitioner assaulted Gillispie. The jury returned a verdict of involuntary manslaughter.[1] Subsequently, the defendant moved to quash the malicious wounding indictment, maintaining that the jury's finding that the killing of Sutphin was without malicious intent collaterally estopped the Commonwealth from attempting to establish that the wounding of Gillispie was with such intent. The trial court rejected petitioner's double jeopardy claim and he was tried on the charge of malicious wounding. Petitioner was convicted of malicious shooting and

---

1. Due to an erroneous evidentiary ruling at trial, the Virginia Supreme Court reversed petitioner's manslaughter conviction and remanded the case for a new trial. *Jones v. Commonwealth*, 217 Va. 226, 228 S.E.2d 124 (1976).

sentenced to sixteen years in prison. He appealed his conviction to the Virginia Supreme Court reasserting the double jeopardy claim. In an opinion entered on September 2, 1976, the Supreme Court of Virginia rejected that claim and affirmed the malicious shooting conviction. On March 7, 1978, the petitioner filed this petition for writ of habeas corpus with the District Court for the Western District of Virginia asserting several claims[2] including his claim of double jeopardy.

*Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) held that the Fourteenth Amendment makes applicable to the state the Fifth Amendment bar of double jeopardy, and in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the court found the Fifth Amendment prohibition against double jeopardy to be "a constitutional bar not only to retrial for the same offense, but also to relitigation of adjudicated issues whether they emerge in trials for the same or distinct offenses." *U. S. v. Nash,* 447 F.2d 1382, 1384 (4th Cir. 1971). In *Ashe* the petitioner was acquitted of the robbery of one of six participants in a poker game but was later tried and convicted of robbery of another of the poker players. In the state courts, the decision withstood appeal and collateral attack. The Supreme Court reversed, however, finding the subsequent prosecution to have been barred by principles of collateral estoppel which it found to be incorporated in the Fifth Amendment prohibition against double jeopardy. Noting that "[t]he federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading

book, but with realism and rationality," *Ashe v. Swenson, supra,* at 444, 90 S.Ct. at 1194, the court adopted a practical facts and circumstances approach to the examination of claims of collateral estoppel:

> Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceeding."

*Ashe v. Swenson, supra,* at 444, 90 S.Ct. at 1194. In the court's opinion "[a]ny test more technically restrictive would . . . simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal." *Id.*

■ In the present case, in petitioner's murder trial, which occurred first, the trial court instructed the jury as to the lesser included offense of involuntary manslaughter. As the trial court instructed, involuntary manslaughter is defined as,

> . . . the killing of one accidentally, contrary to the intentions of the defendant, while in the prosecution of some unlawful, but not felonious act, or in the unlawful performance of a lawful act, accompanied by such carelessness or recklessness on the part of the defendant as is

**2.** In addition to his claim of double jeopardy, petitioner maintains that his rights under the Fourteenth Amendment were violated by the prosecutor when he made an allegedly improper statement in his closing arguments in referring to petitioner as a "seller of whiskey" and by the court in allowing a diagram of the deceased victim to remain before the jury after it had ceased to have "any legitimate purpose . . . ." Neither of these objections was made in conformity with Virginia's contemporaneous objection rule, Rule 5:21 (formerly Rule 5:7) of the Criminal Rules of the Supreme

Court of Virginia, *see, e. g., Smith v. Commonwealth,* 217 Va. 9, 225 S.E.2d 194 (1976), and are accordingly improper subjects for consideration in federal habeas corpus. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Moreover, as to the former of these grounds the prosecutor's characterization was fairly supported by the evidence and the latter a matter of state law not rising to the level of a federal constitutional question. *See Grundler v. N. C.,* 283 F.2d 798 (4th Cir. 1960); *Chance v. Garrison,* 537 F.2d 1212 (4th Cir. 1976).

incompatible with a proper regard for human life.

The statute pursuant to which petitioner was subsequently convicted of wounding Jarel Gillispie defines malicious shooting as the malicious shooting of any person ". . . with the intent to maim, disfigure, disable, or kill." Va.Code Ann. § 18.2–51 (1975) (formerly Va.Code Ann. § 18.1–65).[3]

In analyzing the collateral estoppel problem, the Virginia Supreme Court noted that in petitioner's first trial no instruction was proffered or granted concerning the law of transferred intent. That court then found that without such an instruction petitioner's intent relative to the wounding of Gillispie was not necessarily resolved in the prior trial:

> Without [a transferred intent] instruction, the defendant's intent and his actions with respect to the wounding of Gillispie really were not issues at the prior trial; the jury in that trial was free to determine the defendant's intent with respect to the killing of Sutphin without necessarily determining his intent with respect to the wounding of Gillispie.

*Jones v. Commonwealth,* 217 Va. 231, 236, 228 S.E.2d 127, 130 (1976). The court found, therefore, that from an examination of the record of the prior trial, "in the language of *Ashe,* 'a rational jury could have grounded its verdict upon an issue other than that which the defendant [sought] to foreclose from consideration.'" 217 Va. at 237, 228 S.E.2d at 131. Consequently, relief was denied.

In making a determination as to the import of the jury's verdict, the court must look to more than the absence of a transferred intent instruction. Undoubtedly, in the absence of either a transferred intent instruction or an instruction linking petitioner's actions with respect to the shooting of Sutphin with the shooting of Gillispie, it could not be maintained that issues were resolved by the jury in the prior trial so as to preclude their subsequent relitigation. While no transferred intent instruction was granted, however, the court's involuntary manslaughter instruction was directed to petitioner's actions as they related to the entire shooting incident and was not limited to petitioner's intentions with respect to Sutphin. Petitioner's actions with respect to Sutphin were linked by the court's instructions, therefore, to his actions with respect to Gillispie. Consequently, the absence of a transferred intent instruction does not end the court's inquiry, and the question remains as to what factual issues were necessarily resolved by the first jury in reaching its verdict of involuntary manslaughter.

It would be erroneous to assume that the jury's verdict does not represent a logical synthesis of the evidence. As previously stated, at his first trial petitioner maintained that he shot both Sutphin and Gillispie in self-defense. The Commonwealth's evidence, however, was to the effect that Sutphin was a bystander who was killed when petitioner assaulted Gillispie. It was suggested, therefore, that the jury's verdict is irrational and in conflict with the evidence but sustainable because the evidence supports a higher degree of homicide. 217 Va. at 235 n. 1, 228 S.E.2d at 130 n. 1. In drawing that conclusion it was necessarily assumed that the jury ignored the court's instruction that to find the defendant guilty of involuntary manslaughter they had to determine that the killing occurred while the petitioner was in the "prosecution of some unlawful, but not felonious act, or in the unlawful performance of a lawful act, accompanied by such carelessness or recklessness on the part of the defendant as is incompatible with a proper regard for human life." This line of reasoning, however, is based upon the premise that the jury's verdict is not a logical synthesis of the evidence presented, when, in fact, the jury might have reached the verdict it reached by accepting part and rejecting

---

**3.** The shooting of another unlawfully but without malicious intent to maim, disfigure, disable, or kill, is a lesser included offense of malicious shooting and is also a felony. *See* Va.Code Ann. § 18.2–51 (1975).

part of the Commonwealth's and petitioner's evidence.

It could not be concluded reasonably that Sutphin was accidentally shot while petitioner was in the performance of an unlawful but not felonious act, as neither the evidence presented nor a logical synthesis of that evidence sustains such a conclusion. On the other hand, consistent with the evidence presented, the jury could have concluded that the killing of Sutphin occurred while petitioner was ". . . in the unlawful performance of a lawful act, accompanied by such carelessness or recklessness on the part of the [petitioner] as is incompatible with a proper regard for human life." The jury was instructed on the privilege of self-defense. In that instruction they were told that when a person is assaulted by another "under such circumstances as to furnish reasonable grounds for apprehending . . ." great bodily harm or death, that person may "use such force as is necessary *against his assailant*" to repel the attack. (Emphasis added.) No instruction was given, however, which told the jury what to do in the event that they found that a bystander was accidentally killed by the petitioner while he was defending himself against another. Absent such an instruction, considering the involuntary manslaughter and self-defense instructions together, the jury could find that the petitioner was exercising his privilege of self-defense in relation to Gillispie but was in careless and reckless disregard for the lives of others in the exercise of that privilege. Whatever might be the legal merits of such a finding,[4] it was made possible by the instructions. In fact, under the verdict it was the only finding that could have been made by a rational jury.

The Commonwealth would have this court find that the jury failed to follow the trial court's instructions in arriving at its verdict and that the verdict could have been rendered upon an issue other than that which the petitioner seeks to foreclose from consideration. Such an argument must be rejected. "To allow the use of far-fetched conjecture or assumption of jury irrationality would inevitably nullify the value of the collateral estoppel test in implementing the Double Jeopardy Clause." *The Supreme Court,* 1969 Term, 84 Harv.L.Rev. 1, 146 (1970). As stated by the Supreme Court, "[a]ny test more technically restrictive" than the one which it had enunciated would "amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based on a general verdict of acquittal." *Ashe v. Swenson, supra,* at 444, 90 S.Ct. at 1194. That test requires the court to look to what ". . . a rational jury could have grounded its verdict upon . . . ." *Id.*

Placing the burden of proof on the petitioner to establish ". . . that the precise issue or question he seeks to preclude was raised and determined in his first action,"[5] *U. S. v. Davis,* 460 F.2d 792, 796 (4th Cir. 1972), and considering the evidence presented, the court's charge to the jury, and the verdict rendered in that action, this court is constrained to conclude that the jury found that the petitioner was in the exercise of the privilege of self-defense when he shot Gillispie. Accordingly, the subsequent trial for malicious wounding was in contravention of the Double Jeopardy Clause of the United States Constitution.

---

**4.** Generally, when circumstances are such as to justify injuring or killing another in self-defense, the person claiming such a privilege is not culpable if he unintentionally kills or injures a third person; it has also been held, however, that the person claiming the privilege of self-defense may be criminally liable for the death of a third person when he acted without care in defending himself. *See* Annot. 55 A.L. R.3rd 620 (1974).

**5.** It has been stated that "considerations of fairness and traditional judicial reluctance to

explore the factors prompting jury decisions seem to dictate resolving doubts . . . in favor of the defendant." *Phillips v. U. S.,* 502 F.2d 227, 232 (4th Cir. 1974) (rev'g judgment of conviction), opinion vacated, 518 F.2d 108 (1975) (rev'g judgment of conviction), vacated and remanded, 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 728 (1976), on remand, 538 F.2d 586 (judgment of conviction aff'd.). Given its subsequent history, however, that case is of dubious precedential value.

526

For the above-stated reasons, petitioner's petition for writ of habeas corpus is granted, and, an appropriate order will this day be entered.