# Richmond

EDWARD V. TAYLOR v. COMMONWEALTH OF VIRGINIA.

June 10, 1946.

Record No. 3051.

Present, All the Justices.

The opinion states the case.

*Ashton Dovell* and *R. Nelson Smith*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *V. P. Randolph, Jr., Assistant Attorney General*, for the Commonwealth.

BROWNING, J., delivered the opinion of the court.

This case grows out of an affray which happened on the night of October 4, 1944, in the neighborhood of the village of Lackey in York County.

Taylor was out looking for some hands to help him with work that he was to do next day. At the intersection of two roads en route there had gathered a number of people who were engaged in a brawl. As he passed he heard some one refer to him, using an opprobrious epithet. Not finding the persons for whom he was looking at the place where he expected they would be, he was told that they were at the house of a person in that locality, and he had to retrace his steps, again passing the group of boisterous and rowdy people. Taylor called out, asking who called his name. Frank Burks answered that nobody had called his name, and according to Taylor's account, Burks pulled a knife from his pocket and advanced upon him in a threatening manner with his hand upraised. Taylor retreated, backing away, while Burks continued to advance, though warned not to do so, until he was near enough to strike at him with the knife, which Taylor avoided and shot to stop Burks; that Burks continued to come at him, and at that time he fired again and then a third time, when his assailant fell. A woman of the party, Vivian Hayes, then attacked him, when he shot her, inflicting a wound, the extent of which is not disclosed by the record.

Burks died from the gun shots. Taylor was indicted for murder and tried. The jury found him guilty of involuntary

manslaughter and fixed his punishment at confinement in jail for one year.

We have stated the facts from the standpoint of the accused, in view of the disposition we shall have to make of the case, but we should say that the evidence of the Commonwealth is in conflict with that of the accused. There were two eyewitnesses who testified. One was the accused, the other was the woman referred to, Vivian Hayes. She said "that Ed Taylor walked up and started to shooting, that he did not say anything to anybody, that he shot Frank Burks, and I asked him to stop shooting Frank, then he shot me in the hip near the stomach." She further said, "When I saw the gun in Taylor's hand, it took everything out of me more or less." She also said that Frank Burks did not threaten Taylor, did not advance upon him and that he did not have any weapon. Thus, the testimony for each side was antipodal. One thing, however, is very clear, and that is that there was a goodly quantity of liquor at hand. Every one was drunk to a greater or less degree. One witness, Joe Fields, said that he was so drunk that he did not know what happened. Another witness, Katherine Allen, said that she had had a plenty to drink and that she did not know who did the shooting, although she was one of the celebrants. Vivian Hayes, who lived in Newport News, but was visiting that night in Lackey, turned up the next morning at a railroad station, Lee Hall, to catch the train for home and, according to Mrs. P. M. Zimmerman, a witness, "she looked very bad, her top coat was on wrong side out, and she was muddy from head to heels, with cakes of mud sticking to her clothing."

It was a tragic occurrence, but the account given by Vivian Hayes is extraordinary, to say the least. One fact that stands out in bold relief and came out in the testimony of the accused, was that Burks had married his sister and that they had separated and that he and the accused had had trouble before the occasion of the shooting and that he had ordered Burks off his place. It should be said that the

accused proved a good reputation for being peaceable, orderly and reliable. The coroner, Dr. L. O. Powell, testified that when he arrived at the scene shortly after 9:00 o'clock, he found the body of Frank Burks lying on its back with the right arm extended and a few inches from the open right hand he found a knife that he thought was open.

There were several assignments of error but it is only necessary, in our view of the case, to notice one.

Instruction "H", which was asked for by the defendant, was in these words:

"H. The court instructs the jury that in passing upon the danger, if any, to which the accused was exposed, you will consider the circumstances as they reasonably appeared to the accused and draw such conclusions from these circumstances as he could reasonably have drawn, situated as he was at the time; in other words, the court instructs you that the accused is entitled to be tried and judged by facts and circumstances as they reasonably appeared to him and not by any intention that may or may not have existed in the mind of the deceased."

The court declined to give the instruction as tendered, but amended it, and gave it as amended. The amendment, we have placed in italics. The instruction as amended is in these words:

"H. The court instructs the jury that in passing upon the danger, if any, to which the accused was exposed, you will consider the circumstances as they reasonably appeared to the accused and draw such conclusion from those circumstances as he could reasonably have drawn, situated as he was at the time; in other words, the court instructs you that the accused is entitled to be tried and judged by facts and circumstances as they reasonably appeared to him, *provided they would so appear to a reasonable man placed under similar circumstances,* and not by any intent that may or may not have existed in the mind of the deceased."

We think it was error not to have given the instruction as tendered. The amendment is the vice of the instruction as given. What reasonably appeared to the accused at

the time of the shooting, as creating the necessity for his act, is the test and not what reasonably appeared to him, provided it would so appear to some other reasonable person under similar circumstances. This court has repeatedly been concerned with this question and has adjudicated it in accordance with the statement we have made.

An outstanding case on this subject is *Fortune* v. *Commonwealth*, 133 Va. 669, 112 S. E. 861. In that case the following instruction was offered and refused:

"If the jury believe from the evidence in this case that the defendant was assaulted by the deceased, with such violence as to make it appear to the defendant at the time that the deceased manifestly intended and endeavored to take his life, or to do him some great bodily harm, and that the danger was imminent and impending, then, in that case, the defendant was not bound to retreat, but had the right to stand his ground, repel force with force, and, if need be, kill his adversary to save his own life or prevent his receiving great bodily injury, and it is not necessary that it shall appear to the jury to have been necessary."

It was held that this instruction correctly stated the law and should have been given.

It was further held, and we quote paragraph 15 of the syllabus:

"An instruction upon self-defense is erroneous which bases the justification for the action of the accused solely upon the abstract proposition of what a reasonable man similarly situated would have believed, omitting all provision with respect to what the accused actually believed, and with respect to what was his actual motive in killing the deceased."

See also the following cases:

*Mercer* v. *Commonwealth*, 150 Va. 588, 142 S. E. 369; *Hale* v. *Commonwealth*, 165 Va. 808, 183 S. E. 180.

We reverse the judgment of the trial court for error in refusing to give instruction "H" as tendered, and we remand

the case to be further dealt with as the Attorney for the Commonwealth may be advised consistent with this opinion.

*Reversed and remanded.*

HOLT, J., dissenting.

The Court in its statement of facts has said: "We have stated the facts from the standpoint of the accused, in view of the disposition we shall have to make of the case, but we should say that the evidence of the Commonwealth is in conflict with that of the accused". In the instant case we have a jury's verdict approved by the presiding judge. Ordinarily we stress those facts which sustain the judgment.

Instruction "H", tendered on behalf of the accused, concludes with this statement: "The court instructs you that the accused is entitled to be tried and judged by facts and circumstances as they reasonably appeared to him and not by any intent that may or may not have existed in the mind of the deceased." The court declined to give it in the form as tendered, but amended it by this addition: "Provided they would so appear to a reasonable man placed under similar circumstances, and not by any intent that may or may not have existed in the mind of the deceased."

As tendered it made the accused a final judge of the imminence of his peril. As amended it left this question of facts to the jury.

In 26 American Jurisprudence, p. 253, is this statement of the law: "What appears to be the prevailing rule in America asserts that the apprehension of danger and belief of necessity which will justify killing in self-defense must be a reasonable apprehension and belief, such as a reasonable man would, under the circumstances, have entertained."

In *Addington* v. *United States*, 165 U. S. 184, 17 S. Ct. 288, 41 L. Ed. 679, Addington was charged with murder and convicted by a trial court. The defendant relied upon *Beard* v. *United States*, 158 U. S. 550, 15 S. Ct. 962, 39 L. Ed. 1086. The Court in distinguishing the cases said: "On

the contrary, the court said, in substance, that if the circumstances were such as to produce upon the mind of Addington, *as a reasonably prudent man* (Italics supplied), the impression that he could save his own life, or protect himself from serious bodily harm, only by taking the life of his assailant, he was justified by the law in resorting to such means, unless he went to where the deceased was for the purpose of provoking a difficulty in order that he might slay his adversary."

In *Mercer v. Commonwealth*, 150 Va. 588, 142 S. E. 369, this Court, speaking through Judge Campbell, said: "It is assigned as error that the court erred in amending instruction No. 2-A. This instruction, as offered by the accused, is as follows: 'If the jury should believe from the evidence that the accused shot the deceased under a reasonable belief that his own life was in danger, or that he was in danger of serious bodily harm, as the facts and circumstances reasonably appeared to him at the time, he was excusable in so doing, whether such danger was real or not. The question for the jury in this case is not whether the taking of the life of the deceased might have been safely avoided, but whether the accused (*in the circumstances of agitation and peril in which he was placed, as reasonably appeared to him*) might reasonably have believed, and did believe, it necessary to shoot as he did, resulting in the death of the deceased, in order to save his life, or avoid serious bodily harm.' The amendment consisted in striking out the italicized portion of the instruction. As offered, the instruction was clearly erroneous, as it assumed as an established fact that at the time of the homicide it reasonably appeared to the accused that he was placed in circumstances of agitation and peril, thereby depriving the jury of a prerogative that belonged exclusively to it. As to whether it reasonably appeared to the accused at the time of the homicide that he was placed in a situation of agitation and peril was a question of fact to be determined by the jury from the evidence in the case and the instructions given by the trial court. Clearly, it was proper to

strike out this portion of this instruction, and no error was committed by the trial court in so doing."

In *McReynolds* v. *Commonwealth*, 177 Va. 933, 15 S. E. (2d) 70, we said: "It is not enough for the accused to say that he was terrified. There is no way by which we can gauge his state of mind. Moreover, one whose nerves were unstrung might have been frightened by facts which would not have troubled an ordinary man at all. It is for a jury to say whether they were reasonably sufficient to warrant an ordinary man in believing that he stood in danger of serious bodily harm. *Fortune* v. *Commonwealth*, 133 Va. 669, 112 S. E. 861; *Mercer* v. *Commonwealth*, 150 Va. 588, 142 S. E. 369."

In *Thomason* v. *Commonwealth*, 178 Va. 489, 17 S. E. (2d) 374, Judge Eggleston said: "In our opinion it is for the jury to say, under proper instructions, whether the killing was done in justifiable self-defense or whether the accused was guilty of voluntary manslaughter. *Wilkins v. Commonwealth*, 176 Va. 580, 584, 11 S. E. (2d) 653, 655.

If the peril was imminent or appeared to be imminent it is preeminently a jury question, to be measured by "what appear to a reasonable man placed under similar circumstances, and not by any intent that may or may not have existed in the mind of the deceased".

If this be not true then in homicide cases counsel in admonition to client need only stress to him the importance of saying in substance to the jury, "I was scared to death. I thought he was going to kill me".

SPRATLEY, J., dissenting.

I concur fully in the dissenting opinion of Mr. Justice Holt.

Instruction "H", as offered, amended and given, does not omit all provision with respect to what the accused actually believed. In its forepart it tells the jury that "in passing upon the danger to which the accused was exposed, you

will consider the circumstances as they reasonably appeared to the accused and draw such conclusion from those circumstances as he could have reasonably drawn, situated as he was at the time: * * * ." The amendment, added by the court, merely gave the jury the test whereby they could measure the reasonableness of the circumstances—that is. that the facts and circumstances were such as might have caused an ordinary reasonable man, placed in the same situation as the accused, to take the same action as the accused took. In other words, it did not permit the accused to be the sole judge of his actions. It left it to the jury to say whether the accused was warranted in his belief, acting as a reasonable man. *McReynolds* v. *Commonwealth*, 177 Va. 933, 15 S. E. (2d) 70.