# Richmond

CARSON ALVIN JONES v. COMMONWEALTH OF VIRGINIA

September 2, 1976.

Record No. 750653.

Present, All the Justices.

*Willard R. Finney (William N. Alexander, II; Greer & Alexander,* on brief), for plaintiff in error.

*Jerry P. Slonaker, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

Tried by jury for murder, the defendant, Carson Alvin Jones, was convicted of involuntary manslaughter and, in accordance with the jury's verdict, was sentenced to a term of one year in the penitentiary. On appeal, the sole question for decision is whether the trial court erred in refusing to admit evidence offered by the defendant concerning events of the day preceding the homicide.

The victim, Billy Hugh Sutphin, was killed by a shotgun blast fired by the defendant. The same shot also wounded Jeral Lee Gillispie. The defendant was tried later for the wounding of Gillispie. Our separate opinion disposing of the defendant's appeal with respect to the wounding of Gillispie will be published sequentially.

The shooting incident occurred December 22, 1974, at the home of the defendant in Franklin County. According to the Commonwealth's evidence, in the afternoon of that day, Jeral Lee Gillispie and Sam Gillispie, who were brothers-in-law, and Billy Hugh Sutphin, who was Sam's son-in-law, went to the defendant's home to purchase bootleg whiskey. The defendant, his father, and others were present in the "main room" of the home, and a card game was in progress. After arrival of the Gillispies and Sutphin, a half-gallon jar of bootleg whiskey was passed around, and "all [present] was drinking."

Sam Gillispie asked to purchase a jar of the bootleg whiskey. He "counted . . . out" eight dollars to Hugh Wagner, who gave the money to the defendant. Wagner asked the defendant "was it all right" to sell the whiskey. The defendant made some statement, and Wagner went outside. Whereupon, the defendant "jumped up from the table and went in the bedroom and come back with his shotgun." The defendant cursed Sam and said to him, "I'm gone kill you if you got a gun." The defendant searched Sam but found no weapon. The defendant's father then interceded, and the defendant "knocked him out of the way with the gun, and the gun went off and went through the wall." The defendant fired a second time, the shot striking Jeral Gillispie and Billy Hugh Sutphin.

The defendant claimed the shooting was in self-defense. According to his testimony, the Gillispies and Sutphin were armed, intoxicated, and abusive upon arrival at his home. When Sam Gillispie introduced Sutphin as his son-in-law, the defendant said, "Well, y'all come up here yesterday and caused trouble. I don't want it started today." The Gillispies and Sutphin, however, continued drinking and "arguing and cussing." The defendant asked them to leave, but they re-

fused. Jeral Gillispie "patted his gun and laughed and said they didn't have to go nowhere." The defendant then went to his bedroom and secured his shotgun. Upon his return, Jeral said the shotgun "won't shoot," and the defendant fired into the wall to prove "the gun would go off." Jeral remarked that he had "something to take care of it" and, with his hand in his pocket, advanced toward the defendant. At the same time, Sutphin, who was behind Jeral, also advanced toward the defendant and "went with his right hand for his gun." The defendant shot Jeral "before he could get [his gun] out." Jeral and Sutphin fell "side by side."

Sutphin was dead when the police arrived. The record is silent whether the police searched Sutphin's body for weapons. The defendant, in his testimony, suggested that Sam Gillispie, after the shooting, might have removed a weapon from Sutphin's body. Jeral and Sam Gillispie both testified that they never carried guns and that they were not armed at the time of the shooting.

At trial, the defendant sought to show by two defense witnesses that on the day preceding the shooting Sam Gillispie and Jeral Gillispie had visited a store near the defendant's home and that Sam then "had a pistol on his person." The defendant also sought to show by his own testimony and by other defense witnesses that the Gillispies had visited his home the preceding day and that both then were armed and "belligerent and abusive."

■ While the defendant himself was permitted to testify to the events at his home the preceding day, the trial court refused to permit him to introduce the testimony of the other defense witnesses concerning either the events at the home or at the nearby store. The defendant contends that the court erred in its refusal.

The defendant correctly states that crucial issues in his plea of self-defense were his state of mind at the time of the shooting and how the circumstances reasonably appeared to him at that time. On the day of the shooting, the defendant argues, he was "confronted with three visitors, two of whom he knew and who had been at his home the day before—armed and belligerent." To deny him the opportunity to show the events of the preceding day, the defendant says, was to deny him "the chance to show his state of mind before the shooting and the circumstances as they reasonably appeared to him on the fatal day."

The defense witnesses whose testimony was excluded were Paul Prater, Grover Carter, Leonard Hodges, Bessie Hodges, and Doris Gearhart. Prater and Carter would have testified that Sam and Jeral

Gillispie visited Prater's store on the day preceding the shooting and that Sam then had "some type of a gun" on his person. These facts, however, were not known to the defendant at the time of the shooting and could not have affected his state of mind or the circumstances as they reasonably appeared to him at that crucial time. The trial court did not err, therefore, in excluding the testimony of Prater and Carter.

No proffer was made of the testimony of Leonard Hodges. Without such proffer, we cannot consider the alleged error in the exclusion of his testimony.

Neither was there a proffer by the defendant of the testimony of Bessie Hodges. The Commonwealth, however, called Mrs. Hodges as a rebuttal witness. She testified concerning the events at the defendant's home on the day preceding the shooting. The defendant was permitted unlimited cross-examination of the witness. Any error, therefore, in the original exclusion of the testimony of Mrs. Hodges was cured by her subsequent appearance on the witness stand.

Exclusion of the testimony of Doris Gearhart presents a more serious problem. Doris and the defendant lived together as man and wife, and she was present at the defendant's home during the Gillispies' visit on the day preceding the shooting. In her proffered testimony concerning the previous day, she stated that Sam Gillispie cursed the defendant and invited him to "step outside." She heard Jeral Gillispie say something "hateful" to her brother-in-law, Emmett Scott, who was also present, "trying to start a racket with him." She saw what she thought was a gun in Jeral's pocket, and she heard both Gillispies say "they had guns."

The Commonwealth contends that the testimony of Doris Gearhart was inadmissible because Billy Hugh Sutphin, for whose death the defendant was on trial, was not present during the events of the preceding day and the testimony did not pertain to him. Citing *Looney v. Commonwealth*, 115 Va. 921, 78 S.E. 625 (1913), the Commonwealth argues that evidence of an antecedent controversy between an accused and a third person is inadmissible if the controversy is not connected with the case on trial, occurs at a different time and place, does not concern the deceased, and takes place in his absence.

The Commonwealth's argument might have merit if Sutphin, unaware of the events of the preceding day, had appeared alone at the defendant's home on the day of the shooting and had become involved in a controversy which resulted in his death at the hands of the defendant. But these were not the facts leading up to Sutphin's death. At the time he visited the defendant's home on the day of the

shooting, Sutphin's companions were his relatives by affinity who **had** been involved on the previous day, according to the defendant's testimony, in a serious controversy with the defendant. That controversy, the defendant testified, ended with the threat by the Gillispies to return "tomorrow" and finish what they had started.

The trial court properly admitted the defendant's testimony concerning the events at his home the preceding day as background to his allegation that the Gillispies had threatened to return and finish what they had started. *A fortiori*, the testimony of Doris Gearhart was admissible to corroborate the defendant's version of the background of the threat. The testimony of both the defendant and Gearhart was relevant to show the defendant's state of mind and the circumstances as they reasonably appeared to him at the time of the shooting. The events at the defendant's home the preceding day, even in the absence of Sutphin, were links in the chain of circumstances leading up to and culminating in the shooting. *See State* v. *Terrall*, 79 W.Va. 358, 361, 92 S.E. 127, 128 (1916).

It was error, therefore, to exclude the testimony of Doris Gearhart. We cannot say that the error was harmless. Accordingly, the judgment of the trial court will be reversed, and the case will be remanded for a new trial on a charge no greater than involuntary manslaughter. Code § 19.2-285.

*Reversed and remanded.*