COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Coleman and Moon[*]
Argued at Salem, Virginia


RALPH JUNIOR GILPIN A/K/A
 RALPH J. LONG
                                          OPINION BY
v.  Record No. 2637-96-3      JUDGE JAMES W. BENTON, JR.
                                       DECEMBER 2, 1997
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
                    Ray W. Grubbs, Judge

        John S. Huntington for appellant.

        Steven A. Witmer, Assistant Attorney General
        (James S. Gilmore, III, Attorney General, on
        brief), for appellee.


     In this appeal we consider whether a prolonged,
investigatory detention of the driver of a vehicle was supported
by reasonable, articulable suspicion that the driver was engaged
in unlawful activity.  Ralph Junior Gilpin contends that he was
detained at a roadblock in violation of the Fourth and Fourteenth
Amendments to the United States Constitution and that, as a
result, the police unlawfully obtained evidence.  Gilpin also
argues that the trial judge erred in finding that he
constructively possessed two firearms found in the vehicle.
Because we hold that the prolonged detention of Gilpin was not
supported by reasonable, articulable suspicion, we need not reach
the issue of constructive possession.

_____
     [*]When the case was argued Judge Moon presided.  Judge
Fitzpatrick was elected Chief Judge effective November 19, 1997.
 Judge Moon participated in the hearing and decision of this case
prior to his retirement on November 25, 1997.

At the hearing on Gilpin's pretrial motion, Trooper Ted Phipps testified that on July 25, 1995, he was working at a traffic checkpoint established in Montgomery County checking drivers' licenses and vehicle registration cards.  He was also looking for expired license tags and obvious equipment violations.  Phipps testified that "the stop is very momentar[y], just a matter of seconds."

When a pickup truck stopped at the roadblock at 10:00 a.m., Phipps asked the driver for his license.  The driver gave Phipps a North Carolina driver's license in the name of Ralph Junior Gilpin.  The registration card that Gilpin gave Phipps indicated that the truck bearing Virginia license plates was registered to Robin Gale McPherson of Roanoke.  Phipps testified that both the driver's license and the vehicle registration card appeared to be valid.

Phipps asked Gilpin if he still resided in North Carolina. Gilpin indicated that he did.  Phipps then asked Gilpin if his privilege to drive in Virginia had been suspended.  Gilpin stated that it had not.  Phipps asked Gilpin who Robin McPherson was. Gilpin stated that she was his "girlfriend."  Phipps testified that he noticed several articles of clothing and duffel bags in the cab of the truck and numerous items such as tools in the bed of the truck.

Phipps directed Gilpin to drive the truck to the shoulder of

the road and wait while Phipps checked his driving status. Gilpin complied with Phipps' order. Phipps testified that he detained Gilpin because he suspected that Gilpin "possibly could be suspended in the State of Virginia." When asked to state all of the circumstances that aroused his suspicions, Phipps testified as follows:

> The fact that he was, had a valid license from another state, the fact that the vehicle itself was registered to someone other than himself with a Roanoke address. The fact that there were numerous items indicating that . . . Gilpin[] could be either be living here or working in the area with the stuff in the pickup [truck] and it's been my experience that in the past that from time to time these people will become suspended in the State of Virginia even though the State of North Carolina may continue to issue them a valid license. That's about it.

Phipps estimated that only a small number of individuals with the same characteristics would actually be found to be driving on a suspended license. He also testified that he did not suspect Gilpin of any other criminal activity.

After considering this evidence and hearing the arguments of counsel, the trial judge overruled the motion to dismiss. The trial judge, in a letter opinion, ruled "that neither the Fourth nor the Fourteenth Amendments have been violated in respect to [Gilpin's] detention by the trooper."

At trial, Phipps again testified about the initial stop of Gilpin. Continuing his description of the events, Phipps testified that after Gilpin obeyed his order and parked the truck

- 3 -

beside the highway, Phipps requested the radio dispatcher to check Gilpin's driving status. Phipps continued to check traffic at the roadblock until the dispatcher informed him that Gilpin was wanted for a parole violation. When Phipps and another officer walked to Gilpin's truck, Gilpin began to drive away. Phipps jumped through the window, told Gilpin he was under arrest, ordered Gilpin to stop the truck, and turned off the ignition.

Phipps testified that as the truck glided to a stop, Gilpin ran from the truck and was eventually stopped by two other officers. Phipps testified that he saw a rifle near the passenger's door and that the rifle would have been visible at the beginning of the traffic stop if it had not been covered. Searching the truck, the officers found a revolver inside a duffle bag on the front seat. When the truck was taken into police custody, Phipps discovered that its serial number did not correspond to the number displayed on the registration card. However, Phipps learned that the truck had been retitled and he released it to the owners.

On this evidence, the trial judge convicted Gilpin of two counts of possession of a firearm after having been convicted of a felony and one count of escape.

## II.

Gilpin does not contest the validity of the initial detention at the roadblock. Instead, he argues that his

prolonged detention beside the highway after he was checked at the roadblock was an unlawful seizure in violation of the Fourth and Fourteenth Amendments because the officer did not have a reasonable, articulable suspicion of his involvement in criminal activity. The Commonwealth contends that Gilpin's vehicle was properly detained for investigatory purposes because the officer had a reasonable suspicion that Gilpin's license was suspended in Virginia.

The principle is well established that "[e]ven when the purpose of a stop is limited and the resulting detention brief, the fourth and fourteenth amendments of the United States Constitution apply to stopping [a vehicle] and detaining its occupants." Taylor v. Commonwealth, 6 Va. App. 384, 387, 369 S.E.2d 423, 424 (1988). Thus, the detention of a driver for investigation at a roadblock constitutes a Fourth Amendment seizure. See Simmons v. Commonwealth, 238 Va. 200, 202, 380 S.E.2d 656, 658 (1989). We assume for purposes of this decision that Gilpin was lawfully detained at the roadblock up to the point where he was ordered to wait by the roadside while Phipps confirmed the status of Gilpin's license.

We hold that the police may not detain a vehicle at a roadblock beyond the brief period necessary to perform the activities authorized in the roadblock plan unless the officers have at least an articulable and reasonable suspicion that a motorist is unlicensed, the vehicle is not registered, or the

motorist or vehicle is otherwise subject to seizure for violation of the law.  See Delaware v. Prouse, 440 U.S. 648, 663 (1979); Waugh v. Commonwealth, 12 Va. App. 620, 621, 405 S.E.2d 429, 429 (1991).

> When there is not probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations – or other articulable basis amounting to reasonable suspicion that the driver is unlicensed or his vehicle unregistered – we cannot conceive of any legitimate basis upon which a patrolman could decide that stopping a particular driver for a spot check would be more productive than stopping any other driver.  This kind of standardless and unconstrained discretion is the evil the Court has discerned when in previous cases it has insisted that the discretion of the official in the field be circumscribed, at least to some extent.

Prouse, 440 U.S. at 661 (emphasis added) (footnote omitted).

As a reviewing court, we "must determine upon an objective assessment of the totality of the circumstances 'whether the officer could have entertained an articulable reasonable suspicion that the defendant was involved in unlawful activity.'"  Waugh, 12 Va. App. at 622, 405 S.E.2d at 430 (quoting Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989)).  When we consider the totality of the circumstances, we must view the facts objectively through the eyes of a reasonable police officer and be guided by the principle that "[t]he detaining officer 'must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'"  Zimmerman v. Commonwealth, 234 Va. 609, 612, 363 S.E.2d 708, 709

(1988) (citations omitted).

Thus, the officer must be able to "'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant'" detaining a driver to conduct further investigation. Taylor, 6 Va. App. at 388, 369 S.E.2d at 424 (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)). While an officer "may identify criminal behavior which would [otherwise] appear innocent to an untrained observer, . . . 'any such special meaning must be articulated to the courts and its reasonableness [must be] assessed independently of the [officer's] subjective assertions.'" Taylor, 6 Va. App. at 388, 369 S.E.2d at 425 (citation omitted).

To support its contention that Phipps could infer that Gilpin was involved in criminal activity, the Commonwealth points to evidence that Phipps based his suspicions on his twenty-two years of experience as a police officer. He also based his suspicion on the facts that Gilpin had a North Carolina license, the vehicle was registered to a third party with a Virginia address, and numerous items of property were strewn throughout the cab and bed of the truck. Phipps further stated that it had been his experience that North Carolina will issue driver's licenses to drivers who have had their licenses suspended in Virginia.

This evidence, however, does not support a finding that Phipps had a reasonable suspicion to extend the detention of

Gilpin.  Phipps admitted that, based upon his experience, only a small percentage of persons presenting the circumstances he relied upon in making his assessment have in fact been driving in Virginia after the Commonwealth had suspended their licenses.  Indeed, Phipps readily admitted that Gilpin "could have been working here and driving back to North Carolina weekly."  In addition, Phipps' belief that the State of North Carolina will issue driver's licenses in an unlawful manner is purely conjecture and unsupported by any valid evidence in the record.  At best, Phipps' suspicion amounts to merely an "'inchoate and unparticularized suspicion or "hunch" . . . [rather] than a fair inference in the light of his experience.'"  Murphy, 9 Va. App. at 144, 384 S.E.2d at 128 (quoting Reid v. Georgia, 448 U.S. 438, 441 (1980)).  It "'is simply too slender a reed to support the seizure.'"  Id.

Based on an objective assessment of the totality of the circumstances, we find that the officer could not have entertained a reasonable suspicion that Gilpin was involved in unlawful activity.  Accordingly, there was no justification for detaining Gilpin at the roadblock for further investigation.  As a result of the unlawful detention, the officer learned Gilpin's name and found a rifle and handgun in the truck.  As a "fruit" of the detention that violated the Fourth and Fourteenth Amendments, the evidence uncovered must be suppressed.  See Zimmerman, 234 Va. at 613, 363 S.E.2d at 710; Commonwealth v. Ealy, 12 Va. App.

744, 754, 407 S.E.2d 681, 687-88 (1991); Murphy, 9 Va. App. at 146, 384 S.E.2d at 129.  Without the evidence acquired in the illegal detention, the evidence was insufficient to support Gilpin's conviction.

                                III.

     The Commonwealth also argues that Gilpin's arrest for parole violation and resistance after the officer told him he was under arrest for a parole violation justified a further seizure that resulted in the discovery of the guns.  We disagree.

     "'The exclusionary rule operates . . . against evidence seized and information acquired during an unlawful search or seizure . . . [and] against derivative evidence discovered because of the unlawful act.'"  Watson v. Commonwealth, 19 Va. App. 659, 663, 454 S.E.2d 358, 360 (1995) (citation omitted). Thus, evidence must be suppressed when it is "'come at by exploitation of [the initial] illegality rather than by means sufficiently distinguishable to be purged of the primary taint.'" Hall v. Commonwealth, 22 Va. App. 226, 229, 468 S.E.2d 693, 695 (1996) (citation omitted).

     Prior to the original unlawful detention, the police were unaware that Gilpin was wanted for a parole violation.  As a result of the unlawful detention, the officer learned Gilpin's name and used that necessary information to check Gilpin's status.  Without the information obtained as the fruit of the unlawful detention, the officer would not have had probable cause

to arrest Gilpin for a parole violation.  No intervening cause or event occurred to remove the taint of the illegal detention.  Thus, the evidence acquired during the seizure for the parole violation was obtained as a result of unlawful means and was not sufficiently attenuated from the original unlawful detention to purge the taint of that detention.  See Ealy, 12 Va. App. at 755, 407 S.E.2d at 688; Walls v. Commonwealth, 2 Va. App. 639, 654-55, 347 S.E.2d 175, 184 (1986).

Accordingly, we reverse the conviction and dismiss the charges.

Reversed and dismissed.