Tuesday          24th

November, 1998.


David Toran Peeples,                                    Appellant,

 against        Record No. 1261-97-2
                Circuit Court Nos. CR96-3377 and CR96-3378

Commonwealth of Virginia,                              Appellee.


Upon a Petition for Rehearing En Banc

Before the Full Court


On October 13, 1998 came the appellee, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on September 29, 1998, and grant a rehearing en banc thereof.

On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on September 29, 1998 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellee shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Elder and Bumgardner
Argued at Richmond, Virginia


DAVID TORAN PEEPLES
                                              OPINION BY
v.  Record No. 1261-97-2          JUDGE JAMES W. BENTON, JR.
                                         SEPTEMBER 29, 1998
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                     Thomas N. Nance, Judge

           Kieran T. Grennan (Grennan, Tondrowski, White
           and Wicker, Affiliated Law Offices, on
           brief), for appellant.

           Eugene Murphy, Assistant Attorney General
           (Richard Cullen, Attorney General, on brief),
           for appellee.



     David Toran Peeples, a juvenile, was tried and convicted by

a jury of aggravated malicious wounding and use of a firearm in

the commission of aggravated malicious wounding in violation of

Code §§ 18.2-51.2 and 18.2-53.1, respectively.  On appeal,

Peeples contends the trial judge erred in refusing to admit

expert testimony regarding Peeples's mental state, which was

offered to negate malice and to aid in his claim of self-defense.

 For the reasons that follow, we hold that the evidence was

admissible because it tended to aid his claim of self-defense.

Therefore, we reverse Peeples's convictions and remand for a new

trial.

                               I.

     At trial, Paul Hicks testified that on the evening of August

24, 1996, he and Richard Harvey were walking along a street when

Peeples drove by. Hicks called to Peeples, whom he had known for many years. Peeples parked his car, exited the vehicle with Ross Jefferson, and asked Hicks and Harvey if they wanted to purchase a "blunt" -- a hollowed out cigar stuffed with marijuana -- for two dollars. When Hicks and Harvey gave Peeples two dollars, Peeples rolled the marijuana blunt. However, Peeples refused to give the marijuana blunt to Hicks and Harvey because Peeples wanted to smoke it with them. After Hicks and Peeples argued, Hicks grabbed the marijuana blunt. Peeples walked away, leaving Hicks, Harvey, and Jefferson.

Peeples returned a few minutes later and walked into an alley with the three young men. Peeples continued to argue with Hicks, who was then smoking the marijuana. During the argument, Peeples withdrew a gun and shot Hicks twice, once in each leg. Harvey, who was standing nearby, asked Peeples what he was doing. Peeples replied, "Y'all want to fuck with me?," and chased Harvey down the street. Peeples then returned and shot Hicks three more times, twice in the abdomen and once in the head, while Hicks was lying on the ground.

Harvey testified that all four of the teenagers had known each other for many years. He testified that he and Hicks each gave Peeples one dollar for the marijuana blunt. Harvey's testimony of events was consistent with Hicks's testimony.

The surgeon who operated on Hicks testified that the shots to Hicks's legs had a "straight-through trajectory" and the shots

to the abdomen and head had a "downward trajectory." He testified that the shot to the head appeared to come from behind the ear and exit through the nose. Hicks lost vision in his right eye as a result of the shooting.

Peeples, who was sixteen years of age and in the eighth grade, testified in his own defense. He testified that the events began when Hicks and Harvey asked him to change a twenty dollar bill. When Peeples displayed his money in the alley, Hicks said, "We're taking this." Harvey said, "Yeah. That's right. We're taking it," and began reaching to his waist as if he had a gun. Peeples said he was scared, thought he was being robbed, and believed he would have been shot because Hicks had a reputation for violence and other people had been robbed in the neighborhood. Peeples testified that he panicked, drew his gun, and pulled the trigger without aiming.

Before trial, the Commonwealth made a motion in limine to exclude the testimony of Dr. Michelle Nelson, a psychologist, who would testify concerning Peeples's mental condition at the time of the offense. The trial judge reserved ruling on that motion. At trial, Peeples's counsel proffered that Dr. Nelson would testify that Peeples was mildly mentally retarded. Peeples's counsel also proffered that Dr. Nelson would testify that because of "the particular way that [Peeples's] mind is affected, he has extreme difficulty correctly interpreting social situations. He tends to miss the point exactly what is happening and reacts

inappropriately."  Peeples's counsel argued that Dr. Nelson's testimony regarding the way in which Peeples mentally perceived social situations would be relevant to two issues:  (1) whether Peeples acted under heat of passion rather than with malice when he shot Hicks and (2) whether the shooting was an excusable act of self-defense.  The trial judge granted the Commonwealth's motion to exclude the testimony.

The jury convicted Peeples of aggravated malicious wounding and use of a firearm in the commission of this offense.  At the sentencing hearing, Dr. Nelson testified that Peeples has a cognitive impairment and is mentally retarded with an IQ of 55. She also testified that "Peeples is likely to interpret social situations differently than most people. . . .  [H]e has problems with impulse control, he's likely to jump to conclusions that other people wouldn't necessarily jump to."  The trial judge sentenced Peeples, a juvenile, to twenty-five years on the aggravated malicious wounding charge and three years on the firearm charge.  See Code § 16.1-272.

                                II.

"As a general rule, a litigant is entitled to introduce all competent, material, and relevant evidence tending to prove or disprove any material issue raised, unless the evidence violates a specific rule of admissibility."  Tarmac Mid-Atlantic, Inc. v. Smiley Block Co., 250 Va. 161, 166, 458 S.E.2d 462, 465 (1995). "Evidence is admissible if it is both relevant and material," and

it is inadmissible if it fails to satisfy either of these criteria. Evans-Smith v. Commonwealth, 5 Va. App. 188, 196, 198, 361 S.E.2d 436, 441, 442 (1987). "Evidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case." Ragland v. Commonwealth, 16 Va. App. 913, 918, 434 S.E.2d 675, 678 (1993). "Evidence is material if it relates to a matter properly at issue." Evans-Smith, 5 Va. App. at 196, 361 S.E.2d at 441 (emphasis added).

Peeples contends that Dr. Nelson's testimony was relevant to prove self-defense. Peeples argues that his point of view, state of mind, and the manner in which he perceives events were material to the issue of whether he reasonably feared death or serious bodily injury at the time of the shooting and that Dr. Nelson's testimony was relevant to proving his mental condition and his perception of social situations. We agree.

Self-defense is a recognized defense to a criminal charge in Virginia. See McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978).

> "Homicide [or wounding] in self-defense may be either justifiable or excusable. If it is either, it entitles the prisoner to an acquittal." In either case, he is deemed to be innocent and guiltless of any crime.

Bailey v. Commonwealth, 200 Va. 92, 96, 104 S.E.2d 28, 31 (1958) (citations omitted). Assessing whether a particular act was committed in self-defense is distinct from determining whether its commission was intentional. In making a plea of

self-defense, "a defendant implicitly admits the killing [or wounding] was intentional." McGhee, 219 Va. at 562, 248 S.E.2d at 810 (emphasis added). Instead, the issue in a plea of self-defense is whether the accused's admittedly intentional act was either justifiable or excusable. See id.; cf. Barrett v. Commonwealth, 231 Va. 102, 106, 341 S.E.2d 190, 192 (1986) (stating that "[a] plea of self defense and a claim of provoked heat of passion do not conflict with each other").

The "crucial issues" in a plea of self-defense are the defendant's "state of mind at the time of the shooting and how the circumstances reasonably appeared to [the defendant] at that time." Jones v. Commonwealth, 217 Va. 226, 229, 228 S.E.2d 124, 125 (1976) (emphasis added). The test of self-defense is whether the defendant reasonably feared "death or serious bodily harm to himself at the hands of his victim." McGhee, 219 Va. at 562, 248 S.E.2d at 810. "It is not essential to the right of self-defense that the danger should in fact exist." Id. However, "[t]he bare fear that a man intends to commit murder [or inflict serious bodily injury], however well grounded, unaccompanied by any overt act indicative of such an intent, will not warrant killing [or injuring] the party by way of prevention." Harper v. Commonwealth, 196 Va. 723, 731, 85 S.E.2d 249, 254 (1955) (citation omitted).

Unlike other tests used to evaluate whether conduct was legally "reasonable," the Supreme Court has emphasized that the

test of whether an accused's fear was sufficiently reasonable to justify acting in self-defense is based upon the accused's subjective point-of-view rather than the reaction of an ordinary person to similar circumstances.[1]  See McGhee, 219 Va. at 562, 248 S.E.2d at 810 (noting the "subjective nature of the defense" of self-defense).  "[W]hether the danger is reasonably apparent is always to be determined from the viewpoint of the defendant at the time he acted."  Id.  Although most jurisdictions require that a defendant's fear be both subjectively real and objectively reasonable before a homicide or wounding will be justified or excused on the ground of necessity, the Supreme Court has expressly rejected any objective component in Virginia's test.[2]

[1]  For examples of other legal standards employing a standard of "objective" reasonableness, see Gazette, Inc. v. Harris, 229 Va. 1, 22-23, 325 S.E.2d 713, 729 (1985) (holding that, in determining whether an editor of a publication exercised ordinary care in a suit for libel, "a trial judge must decide, viewing the circumstances objectively, whether a reasonable and prudent editor should have anticipated that the words used carried an imputation necessarily harmful to reputation"); Griffin v. Shively, 227 Va. 317, 321, 315 S.E.2d 210, 212-13 (1984) (stating that, for the purpose of determining tort liability, a defendant has committed ordinary negligence if he or she failed "to use 'that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another'"); Gilpin v. Commonwealth, 26 Va. App. 105, 110-11, 493 S.E.2d 393, 396 (1997) (stating that, in assessing the legality of an investigative stop made by a police officer, the court must "view the facts objectively through the eyes of a reasonable police officer" to determine whether "the officer could have entertained an articulable reasonable suspicion that the defendant was involved in unlawful activity").

[2]  See Wayne R. LaFave and Austin W. Scott, Jr., Handbook on Criminal Law § 53 (1972) (stating that "the case law and statutory law on self-defense generally require that the defendant's belief in the necessity of using force to prevent

The Supreme Court has ruled as follows:
"'What reasonably appeared to the accused at the time of the shooting, as creating the necessity for his act, is the test and <u>not what reasonably appeared to him, provided it would so appear to some other reasonable person under similar circumstances</u>.'"

<u>Id.</u> at 562, 248 S.E.2d at 810 (quoting <u>Harper</u>, 196 Va. at 731, 85 S.E.2d at 254) (emphasis added); <u>see</u> <u>Taylor v. Commonwealth</u>, 185 Va. 224, 227-28, 38 S.E.2d 440, 441 (1946) (holding trial judge erred in giving jury instruction on self-defense which stated that the accused's fear should be evaluated from both the accused's subjective point-of-view and from the perspective of "a reasonable man placed under similar circumstances").[3]  Thus,

harm to himself be a reasonable one, so that one who honestly though unreasonably believes in the necessity of using force in self-protection loses the defense" but noting that "[t]here is a little authority that an honest belief in the necessity of self-defense will do; it need not in addition be a reasonable belief"); 2 Charles E. Torcia, <u>Wharton's Criminal Law</u> § 127 (15th ed. 1993) (stating that, in order to invoke the defense of self-defense, "[t]he test is whether a reasonable man under similar circumstances would have believed that he was in danger" but noting "[o]ther courts regard it as immaterial whether an ordinarily courageous man would or would not have believed that

it was necessary to take life"); <u>see also</u> 40 C.J.S. <u>Homicide</u> § 132 (1991) (same); 40 Am.Jur.2d <u>Homicide</u> § 154 (1968) (same).

[3]  In <u>Taylor</u>, the Supreme Court apparently overruled its earlier decision to incorporate an objective "reasonable person" component into the test of self-defense.  In <u>McReynolds v. Commonwealth</u>, 177 Va. 933, 15 S.E.2d 70 (1941), decided five years before <u>Taylor</u>, the Court stated:

It is not enough for the accused to say that he was terrified.  There is no way by which we can gauge his state of mind.  Moreover, one whose nerves were unstrung might have been frightened by facts which would not have

unlike in the context of determining mens rea, the accused's mental state and manner of perception are material issues to a plea of self-defense, regardless of whether an insanity defense has been raised. See Craig v. Commonwealth, 14 Va. App. 842, 844, 419 S.E.2d 429, 431 (1992) (holding that when a claim of self-defense is made "the acts must be viewed through the eyes of the person allegedly threatened"); cf. Jacobs v. Jacobs, 218 Va. 264, 267, 237 S.E.2d 124, 126 (1977) (in civil context, question of duress "is to be determined on consideration of the surrounding circumstances such as age, sex, capacity, situation, and relation of the parties").

In light of the subjective test for determining the reasonableness of a defendant's fear in a plea of self-defense, the trial judge erred when he concluded that Dr. Nelson's testimony had no tendency to prove a material issue. The record indicates Dr. Nelson would have testified that Peeples had an IQ of 55, was "likely to interpret social situations differently than most people," had "problems with impulse control," and was "likely to jump to conclusions that other people wouldn't necessarily jump to." This evidence is probative of Peeples's

troubled an ordinary man at all. It is for a jury to say whether they were reasonably sufficient to warrant an ordinary man in believing that he stood in danger of serious bodily harm.

Id. at 943, 15 S.E.2d at 74 (emphasis added); see Taylor, 185 Va. at 229-32, 38 S.E.2d at 442-43 (Holt, J., dissenting).

- 10 -

state of mind and manner of perception at the time of the shooting.[4]

In addition, Dr. Nelson's testimony was relevant to the credibility of Peeples's testimony that he actually feared serious bodily injury at the hands of Hicks and Harvey. Peeples testified that he feared he was being robbed by Hicks and Harvey and could possibly be shot. According to Peeples, Harvey reached for what Peeples believed was a gun. Peeples testified he responded by firing his gun in a panic. In assessing the credibility of Peeples's version of the facts, the jury had to determine first, whether Peeples had an honest belief that he was in danger, and second, whether, from Peeples's perspective, Harvey's reaching motion, along with the comments of Harvey and Hicks that they were taking Peeples's money, were "indicative of a present purpose to make the apprehended attack." Stoneman v. Commonwealth, 66 Va. (25 Gratt.) 887, 900 (1874). Dr. Nelson's expert opinion about Peeples's mental condition would have tended to prove whether Peeples's testimony represented a truthful account of his actual interpretation of his encounter with Hicks

---

[4] Contrary to the Commonwealth's argument, the record does not indicate that Dr. Nelson's testimony would have directly addressed the "ultimate issue" of whether Peeples was reasonably afraid of death or serious bodily harm at the time of the shooting. Instead, Dr. Nelson's testimony was limited to testimony about Peeples's general mental characteristics and was merely probative of the ultimate issue of the subjective reasonableness of Peeples's fear. As such, this case is distinguishable from Zelenak v. Commonwealth, 25 Va. App. 295, 300, 487 S.E.2d 873, 875 (1997).

and Harvey.

The holding in <u>Stamper v. Commonwealth</u>, 228 Va. 707, 324 S.E.2d 682 (1985), excluding proof of a defendant's mental state with psychiatric evidence, has no application to this aspect of this case because, unlike in <u>Stamper</u>, the issue of Peeples's mental state was properly at issue. The applicability of <u>Stamper's</u> rule of exclusion is limited to those criminal cases where the accused's mental state is not a material issue. Although the holding of <u>Stamper</u> is broadly worded and might be read as prohibiting the admission of expert psychiatric opinion regarding a defendant's mental condition during the guilt phase of a criminal case unless insanity is raised as a defense,[5] the Supreme Court has sanctioned the use of such evidence for at least one other purpose. In <u>Greenfield v. Commonwealth</u>, 214 Va. 710, 204 S.E.2d 414 (1974), the Supreme Court tacitly approved the admissibility of a psychiatrist's opinion regarding the defendant's mental state when the defense of "unconsciousness" had been raised. <u>See</u> <u>id.</u> at 713-14, 204 S.E.2d at 417-18 (noting that the defense of unconsciousness may be raised by "persons of sound mind"); <u>see also</u> <u>LeVasseur v. Commonwealth</u>, 225 Va. 564, 586, 304 S.E.2d 644, 656 (1983) (stating that "[w]hen . . . no insanity defense is interposed, the defendant's mental condition

---

[5] <u>See</u> <u>Stamper</u>, 228 Va. at 717, 324 S.E.2d at 688 ("we hold that evidence of a criminal defendant's mental state at the time of the offense is, in the absence of an insanity defense, irrelevant to the issue of guilt").

is only relevant insofar as it might be probative of <u>a fact in issue</u>").

The Supreme Court's subsequent treatment of <u>Stamper</u> further indicates that psychiatric opinion is inadmissible during the guilt phase only when a defendant's mental state is not properly at issue. In <u>Smith v. Commonwealth</u>, 239 Va. 243, 389 S.E.2d 371 (1990), the Court restated the holding of <u>Stamper</u> in more refined terms. It noted that "[i]n <u>Stamper v. Commonwealth</u>, 228 Va. 707, 324 S.E.2d 682 (1985), we held that "[u]nless an accused contends that he was beyond [the borderline of insanity] when he acted, <u>his mental state is immaterial</u> to the issue of specific intent." <u>Smith</u>, 239 Va. at 259, 389 S.E.2d at 879 (emphasis added). <u>Smith</u>, like <u>Stamper</u>, was a case in which no insanity defense was raised and psychiatric evidence regarding the defendant's mental condition was offered to prove whether he possessed the requisite <u>mens</u> <u>rea</u> of the crime charged. <u>Id.</u> at 258-60, 389 S.E.2d at 879-80.

Thus, we conclude <u>Stamper</u> does not compel the exclusion of Dr. Nelson's testimony as it pertains to self-defense because the issue of Peeples's mental state was properly at issue once he raised this defense. As the Supreme Court has noted, a defendant's state of mind is a "crucial issue[]" to determining whether his or her fear of serious bodily harm was subjectively reasonable under the circumstances. <u>Jones</u>, 217 Va. at 229, 228 S.E.2d at 125.

- 13 -

III.

HARMLESS ERROR

The Commonwealth contends that if the trial judge erred, the error was harmless insofar as it related to the jury's finding of guilt. We disagree.

To be harmless "'it [must] plainly appear[] from the record and the evidence . . . that' the error did not affect the verdict." Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (quoting Code § 8.01-678). "An error does not affect a verdict [only] if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." Id.

After reviewing the record in this case, we conclude that the error in refusing to admit Dr. Nelson's testimony on the issue of self-defense was not harmless error as to the jury's finding of guilt. Peeples testified that he knew Hicks had a violent reputation. Peeples saw Harvey reaching for what Peeples believed was a gun. Peeples believed he was being robbed and feared he might be shot. Peeples testified that he started shooting because he "panicked." Although the record contains evidence that clearly contradicts Peeples's claim of self-defense, "[o]ther evidence of a disputed fact standing alone, does not establish that an error is harmless." Hooker v. Commonwealth, 14 Va. App. 454, 458, 418 S.E.2d 343, 345 (1992).

- 14 -

A harmless error analysis is not simply a sufficiency of the evidence analysis.  See id.  Even if "the other evidence amply supports the jury's verdicts, [error is not harmless when] the disputed testimony may well have affected the jury's decision."  Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978).

We cannot say that if the jury believed Peeples's version of the events and had before it the erroneously excluded evidence, it would have reached the same verdict.  We also cannot say that the only reasonable conclusion to be drawn from this evidence was that when Peeples shot Hicks, Peeples did not act in self-defense.  Because this excluded evidence clearly tended to support Peeples's claim of self-defense, it does not "plainly appear" that the proffered evidence would not have affected the verdict.

For the foregoing reasons, we hold that the trial judge erred in refusing to allow Peeples to introduce psychological testimony regarding his mental condition for the purpose of establishing whether he acted in self-defense.[6]  Accordingly, we reverse the judgment and remand for a new trial.

<u>Reversed and remanded.</u>

---

[6]  In view of our holding on this issue, we need not address Peeples's other issue.

- 15 -

Bumgardner, J., dissenting.


I respectfully dissent from the majority's decision.

I believe Zelenak v. Commonwealth, 25 Va. App. 295, 487 S.E.2d 873 (1997) (en banc), controls this case. In Zelenak, the defense was duress, and the issue was whether the threat to the defendant "caused her reasonably to believe that performing the criminal conduct was her only reasonable opportunity to avoid imminent death or serious bodily harm." Id. at 300, 487 S.E.2d at 875. This Court, sitting en banc, held that the trial court properly excluded expert psychological opinion because it was an opinion on the ultimate issue.

In this case, the defense is self-defense, and the issue is whether the defendant "reasonably feared death or serious bodily injury at the time of the shooting." However, the majority holds that the trial court improperly excluded expert psychological opinion because it was not an opinion on the ultimate issue. The majority dismisses Zelenak in a footnote and adopts the reasoning of the dissent. I do not believe that precedent can be dismissed so simply. In Zelenak the defense was duress; in this case the defense was self-defense. In both, the mental element necessary to establish the defense was the subjectively reasonable fear of the defendant. If psychological opinion was not permissible in one, it cannot be permissible in the other.

The majority disregards the clear holding of Stamper v. Commonwealth, 228 Va. 707, 324 S.E.2d 682 (1985). That case held

- 16 -

as follows: "we hold that evidence of a criminal defendant's mental state at the time of the offense is, in the absence of an insanity defense, irrelevant to the issue of guilt." Id. at 717, 324 S.E.2d at 688. The Court refused to adopt a diminished capacity theory of criminal responsibility. Further, the Court interpreted the evidence as an attempt to introduce expert opinion on the ultimate fact. In its conclusion, the Court stated the fundamental reason for such exclusion:

> The state of knowledge in the fields of medicine and psychiatry is subject to constant advance and change. The classifications and gradations applied to mental illnesses, disorders, and defects are frequently revised. The courts cannot, and should not, become dependent upon these subtle and shifting gradations for the resolution of each specific case.

Stamper, 228 Va. at 716, 324 S.E.2d at 688.

Stamper is controlling precedent. It was neither limited nor refined by Smith v. Commonwealth, 239 Va. 243, 259-60, 389 S.E.2d 871, 879-80, cert. denied, 498 U.S. 881 (1990), as the majority suggests. Rather, it was followed with approval in all respects as it has been in later cases. See Jenkins v. Commonwealth, 244 Va. 445, 456, 423 S.E.2d 360, 367-68 (1992), cert. denied, 507 U.S. 1036 (1993).

I believe the trial court correctly excluded this opinion evidence based on the direct precedent of Zelenak and the controlling rationale of Stamper. I would affirm the convictions.

- 17 -