COURT OF APPEALS OF VIRGINIA

Present:  Judges Alston, Chafin and Senior Judge Haley
Argued at Fredericksburg, Virginia

CHOON POONG LEE

v.       Record No. 1897-16-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE JAMES W. HALEY, JR.
DECEMBER 19, 2017

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Penney S. Azcarate, Judge

Charles J. Swedish (Sloan & Swedish, on brief), for appellant.

Stephen L. Forster, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Choon Poong Lee, appellant, was convicted by a jury of statutory burglary, in violation

of Code § 18.2-91.[1]  Code § 18.2-91 provides, in pertinent part, that "[i]f any person . . . [in the

daytime breaks and enters . . . a dwelling house, as prohibited in Code] § 18.2-90 with intent to

commit larceny . . . he shall be guilty of statutory burglary . . . ."  The legislature imposes an

enhanced penalty "if the person was armed with a deadly weapon at the time of such entry."

Code § 18.2-91.  Appellant concedes he was guilty of breaking and entering the dwelling, but

contends the evidence was not sufficient to prove he was armed with a deadly weapon at the time

of entry.  The issue here for resolution is whether a not *per se* deadly weapon may be defined as

a deadly weapon based upon its possessor's intent and subsequent use as a deadly weapon.  We

conclude it can be so defined.  For the reasons that follow, we affirm.

---

[1] Appellant was also convicted of attempted rape, animate or inanimate object sexual
penetration, and robbery.  On appeal, appellant challenges only the breaking and entering while
armed with a deadly weapon conviction.

BACKGROUND

"Applying principles of appellate review, we recite the facts in the light most favorable to the prevailing party below, the Commonwealth." Jones v. Commonwealth, 279 Va. 295, 298, 687 S.E.2d 738, 739 (2010). So viewed, the evidence adduced at trial established that appellant knew the victim and her family from church and he previously worked with the victim's husband. Appellant had helped the family move into their residence.

On September 23, 2015, the victim was home alone during the daytime while her children were at school and her husband was at work. Late that morning, appellant parked his truck near the victim's home and walked to the back of the home. A neighbor's security camera recorded appellant sitting in his truck and the victim's car parked in the driveway. The video showed appellant walking to the victim's home, wearing gloves, sunglasses, and a hat. Appellant found an open window to the basement and used a screwdriver to pry open the screen. Appellant went upstairs to where the victim was watching television. Appellant pointed the screwdriver at the victim and demanded money. Appellant approached the victim, putting the screwdriver to her neck and cutting her with it, and he again demanded money. Appellant removed the victim's clothing and touched her breasts and genital area. Appellant attempted to have intercourse with her. The victim testified she feared appellant "was going to kill" her, so she told appellant she would give him money from her purse. Appellant stopped assaulting the victim and followed her to a bedroom. The victim gave him her wallet, which contained approximately $2,000 in currency. Appellant left the home, and the victim immediately called her husband. The victim testified that she did not recognize the man in her home because his face was covered and she could see only his eyes.

Later that same day, Detective Brian Beyerson stopped appellant's truck, which matched the vehicle in the security video. Beyerson transported appellant to police headquarters for

questioning. Detective Matthew Horn conducted the interrogation. Officer Young Lee, no relation to appellant, assisted Horn with translating the conversation as appellant primarily spoke Korean. The FBI later produced an official verbatim translation that was admitted into evidence at trial. Appellant initially lied, but eventually admitted he went to the victim's home. He said his intent was to get money because he owed his brother-in-law $3,000. Appellant stated he pried open the screen to the open window with the screwdriver to get into the home. Appellant told Horn that he covered his face with a towel that he found inside the home by the window. Appellant told Horn he did not know anyone was in the home. Appellant stated that when he went upstairs he was surprised to see the victim watching television. Horn asked appellant why he had the screwdriver. Appellant responded, "Ah, it was just to make [her] threaten . . . I didn't know but, when you open the *window* . . . the window was *opened*, so I couldn't open it with hands."[2]

## ANALYSIS

Appellant admits he committed a breaking and entering, in the daytime, of a dwelling house. He argues, however, that the enhanced penalty for being armed with a deadly weapon does not apply because a screwdriver is not a *per se* deadly weapon and, for purposes of the burglary, he used the screwdriver only as a burglarious tool. Appellant asserts his actions with the screwdriver, inside the home, were not relevant to classify the screwdriver as a deadly weapon because the burglary was complete once he entered the home.

Appellant concedes he used the screwdriver in a deadly manner *after* the burglary was complete. This concession is consistent with the law on non *per se* deadly weapons being classified as deadly. See Pannill v. Commonwealth, 185 Va. 244, 253-54, 38 S.E.2d 457, 462

---

[2] The legend to the FBI's translation indicated words in italics were spoken in English, non-italicized words were spoken in Korean, and the use of brackets was "to denote linguist comments and other editorial."

(1946) ("[A] weapon may not be *per se* deadly, yet the vicious and cruel use of it may be the determinative factor in pronouncing it deadly," including a "steel screw driver.").

The dispositive question, then, is whether there was sufficient evidence to prove the screwdriver could be defined as deadly at the time appellant used it in the commission of the burglary. Viewing the evidence in the light most favorable to the Commonwealth, as we must, "[w]e will reverse a conviction based on a sufficiency challenge only if the trial court's judgment is plainly wrong or without evidence to support it." Smith v. Commonwealth, 61 Va. App. 690, 692, 739 S.E.2d 280, 281 (2013).

It was the Commonwealth's burden to prove that the screwdriver was deadly at the time of commission of the burglary. Pritchett v. Commonwealth, 219 Va. 927, 929, 252 S.E.2d 352, 353 (1979) ("Generally, unless a weapon is *per se* a deadly one, the fact finder should determine whether it, *and the manner of its use*, place it in that category, and the burden of showing these things is upon the Commonwealth." (emphasis added)).

> "As a general rule, a litigant is entitled to introduce all competent, material, and relevant evidence tending to prove or disprove any material issue raised, unless the evidence violates a specific rule of admissibility.". . . "Evidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case." "Evidence is material if it relates to a matter *properly* at issue."

Calhoun v. Commonwealth, 35 Va. App. 506, 509, 546 S.E.2d 239, 241 (2001) (quoting Peeples v. Commonwealth, 28 Va. App. 360, 365, 504 S.E.2d 870, 873 (1998), rev'd on other grounds, 30 Va. App. 626, 519 S.E.2d 382 (1999) (*en banc*)). Appellant asserts the evidence of his use of the screwdriver was not relevant to determine whether the screwdriver was deadly upon entry.

Our jurisprudence advises that an object's manner of use is relevant to establish that an object was a deadly weapon. Pannill, 185 Va. at 253-54, 38 S.E.2d at 462; Pritchett, 219 Va. at 929, 252 S.E.2d at 353. Further,

> Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation - the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety.

Rashad v. Commonwealth, 50 Va. App. 528, 540, 651 S.E.2d 407, 413-14 (2007) (analyzing whether statute prohibiting the use of a firearm in the commission of burglary applied to all forms of burglary) (quoting Rash v. Commonwealth, 9 Va. App. 22, 25-26, 383 S.E.2d 749, 751 (1989)). By enhancing the penalty for breaking and entering while armed with a deadly weapon, it is clear the legislature intended to protect the occupants of the dwelling by discouraging burglars from taking deadly instruments into the dwelling. It follows, therefore, that the manner of an object's use inside the dwelling is relevant to prove the material issue of whether the burglar intended to use an object as a weapon and whether it could be deadly.

What the burglar contemplated, or intended, also is relevant to the inquiry in categorizing an object as a deadly weapon. Evidence of a person's intent can be proven by the person's conduct and statements "*after* the events that constitute the charged crime." Simon v. Commonwealth, 58 Va. App. 194, 206, 708 S.E.2d 245, 251 (2011) (emphasis added). Therefore, the Court concludes that a burglar's actions and statements once inside the dwelling are relevant to prove that a not *per se* deadly weapon was in fact intended to be used as a deadly weapon.[3]

---

[3] Other states appear to have looked to actions within the dwelling to support convictions of armed burglary. See State v. Norris, 2016-Ohio-1526, ¶¶ 19-20 (Ct. App.) (screwdriver pointed at victim in fraternity house was deadly weapon to support finding of aggravated burglary); State v. Candelaria, 6363 P.2d 883, 884 (N.M. Ct. App. 1981) (screwdriver held to victim's throat inside the home was deadly weapon to support finding aggravated burglary).

Finding that the Court can consider appellant's actions before and after the burglary, we address that evidence. The evidence supported a finding that appellant intended to use the screwdriver for the dual purpose of a burglarious tool and a weapon. The evidence demonstrated appellant knew someone was home, as indicated by the car in the driveway and the fact that appellant concealed his identity by covering his face with a towel after entering the dwelling. Further, appellant kept the screwdriver in his hand, for ready use, as he went through the dwelling, rather than leaving it by the window, or otherwise securing it, once he made entry into the dwelling. After his arrest, when asked why he had the screwdriver, appellant immediately replied, "Ah, it was just to make [her] threaten . . ." and to get in through the window. Appellant conceded he used the screwdriver as a deadly weapon once he was in the dwelling. Taken in its entirety, the evidence supports the reasonable conclusion that appellant intended to arm himself with a deadly weapon in the commission of the burglary and in fact used it as a deadly weapon. Accordingly, the conviction for breaking and entering a dwelling house in the daytime while armed with a deadly weapon is affirmed.

Affirmed.