COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Senior Judge Cole
Argued at Richmond, Virginia


APRIL DARNELL EDGECOMBE

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1127-99-2          JUDGE JAMES W. BENTON, JR.
                                           APRIL 11, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                        Robert W. Duling, Judge

            Patricia P. Nagel, Assistant Public Defender
            (David J. Johnson, Public Defender, on
            brief), for appellant.

            Marla Graff Decker, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


      April Darnell Edgecombe conditionally pled guilty to

possession of cocaine with intent to distribute, reserving the

right to appeal the trial judge's denial of her motion to

suppress.  On appeal, she contends the evidence proved her

"consent" to a search was the product of an unlawful seizure.  For

the reasons that follow, we reverse the conviction.

                                I.

      On our review of a trial judge's denial of a motion to

suppress, we view the evidence in the light most favorable to the

Commonwealth.  See Commonwealth v. Grimstead, 12 Va. App. 1066,

_____

      * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

1067, 407 S.E.2d 47, 48 (1991). So viewed, the evidence, which consisted solely of Edgecombe's testimony, proved that Edgecombe arrived in the City of Richmond by bus, walked through the bus terminal, and entered an automobile. The driver, whom she expected to be waiting for her, drove Edgecombe toward her home. One block from Edgecombe's home, the driver parked the automobile. From a vehicle that had been following them from the bus station, a man approached the passenger side of the automobile where Edgecombe was sitting. The man put a badge against the window, identified himself as a police detective, and said he wanted to speak to Edgecombe. He told Edgecombe that he was from the narcotics division, that he was "trying to stop the flow of narcotics," that he had been "informed . . . that [she had] been trafficking drugs," and that he "would like to talk to [her]."

Edgecombe opened the door, put her feet on the curb, and was about to stand, when the detective said, "you don't have to do that." The detective, who was six feet tall and "350 pounds," was standing at the edge of the door. Edgecombe said she "did not have a choice . . . [and] could not have stood up, if [she] wanted to, with [the detective] standing there." She remained seated.

During this encounter, another officer stood on a nearby driveway and a third officer remained in their vehicle. The detective questioned Edgecombe about her travel, asked for identification, and asked where she lived. The detective inquired about the luggage and "said could he check [her] bags." She

-

testified that "from the way he was talking," she did not feel she could refuse.  She gave him the bags.  The detective asked whether she had narcotics.  When she denied having narcotics, he put the bag on the top of the automobile and searched it.  After the detective searched the bag, "he told [her], . . . okay, now you can stand up."

Edgecombe testified that she then stood up but did not feel she could walk away.  She said "he wanted to search [her]."  She testified she told him that he could search her because "he [had] said that they had been informed that [she] had been trafficking drugs into the state, so [she] figured if [she] told him no he couldn't search [her], he would get a search warrant anyway."  The detective "proceeded and searched [her]" by patting her jacket and searching her pockets.  The detective then called for the female officer, who continued the search and found cocaine in Edgecombe's waistband.

Noting that Edgecombe was "probably the most candid and basically honest witness [he had] heard from the stand in regard to searches," the trial judge found that she consented to the search, and he denied the motion to suppress.  After conditionally pleading guilty, Edgecombe appealed.

## II.

Our standard of review is well settled.

> "Ultimate questions of reasonable suspicion
> and probable cause to make a warrantless
> search" involve questions of both law and

-

fact and are reviewed de novo on appeal.  In performing such analysis, we are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.  We analyze a trial judge's determination whether the Fourth Amendment was implicated by applying de novo our own legal analysis of whether based on those facts a seizure occurred.

McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc) (citation and footnote omitted).

As we held in McGee, "when a police officer confronts a person and informs the [person] that he or she has been specifically identified as a suspect in a particular crime which the officer is investigating, that fact is significant among the 'totality of the circumstances' to determine whether a reasonable person would feel free to leave."  25 Va. App. at 200, 487 S.E.2d at 262.  The evidence in this case proved that the detective confronted Edgecombe, told her she was the subject of their investigation, and said he had been informed she was trafficking drugs into Virginia.  The detective positioned himself at the automobile's door in such a manner that Edgecombe could not stand.  In addition, he verbally stopped her as she attempted to leave the automobile.  Edgecombe specifically testified that the manner in which he spoke to her conveyed the unmistakable message that she could not leave.  As further evidence that Edgecombe's freedom to move had been curtailed,

-

the record established that after the detective searched her bag, he announced "okay, now you can stand up." During the encounter two other officers were present. This evidence supports the conclusion that the detective seized Edgecombe during the encounter.

The record contains no evidence which proves that the detective had a reasonable articulable suspicion to believe Edgecombe was engaging in or about to engage in criminal activity. Absent that evidence, the detention was unlawful. See Gilpin v. Commonwealth, 26 Va. App. 105, 110-11, 493 S.E.2d 393, 396 (1997); McGee, 25 Va. App. at 202-03, 487 S.E.2d at 263-64. Moreover, "[b]ecause the seizure of [Edgecombe] was unlawful, the cocaine that was obtained from [her] in the 'consent' search should have been suppressed as 'fruit of the poisonous tree.'" Id. at 203, 487 S.E.2d at 264. Accordingly, we reverse the conviction.

Reversed.