UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Raphael, Lorish and Callins

VICTORIA KRISTEN CRITZER

v.      Record No. 1614-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
JULY 11, 2023

FROM THE CIRCUIT COURT OF AMHERST COUNTY
Michael T. Garrett, Judge

(Craig P. Tiller, on briefs), for appellant. Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Stephen J. Sovinsky, Assistant Attorney General, on brief), for appellee.

Victoria Kristen Critzer appeals her convictions, following a bench trial, for attempted malicious wounding and breaking and entering into a home at night while armed with a deadly weapon, in violation of Code §§ 18.2-26, 18.2-51, and 18.2-91. Critzer contends that the evidence is insufficient to support her convictions. After examining the briefs and record, the panel unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a). For the following reasons, we affirm the convictions.[1]

BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v.*

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] We note that the conviction order and the final sentencing order state that the trial court convicted Critzer for malicious wounding rather than attempted malicious wounding, the offense for which she was actually indicted and convicted. We remand to the trial court for the sole purpose of correcting these scrivener's errors. *See* Code § 8.01-428(B).

*Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

So viewed, the evidence adduced at trial established that Critzer and Jason Critzer (Jason) were legally divorced and shared two sons, of whom Jason had primary custody. Critzer last contacted Jason and the boys in the summer of 2021.

On December 28, 2021, at around 6:00 p.m., Jason was on his living room couch in his home with his oldest son. The television was on but muted. The son was playing a video game on his mobile gaming device while Jason texted his girlfriend. Jason heard a noise coming from the hallway. He looked up and saw Critzer standing in the hallway before their youngest son's bedroom door with a piece of broken wooden pallet in her left hand.

Jason immediately stood up and asked Critzer "what she was doing in [his] damn house." As the pair advanced towards each other, Jason noticed that Critzer held a claw hammer in her right hand. Critzer swung the hammer at Jason, striking him twice in his left shoulder blade. The pair struggled against each other causing the entertainment center to overturn and the television to sail into the Christmas tree.

Lieutenant Steven Paul Bodack responded to a call from Jason's home. Upon arriving at the home, he observed Jason and Critzer intertwined in cords on the floor of the living room. Lieutenant Bodack separated the pair and detained Critzer on the living room couch.

At trial, the Commonwealth played a portion of the video footage of the incident recorded by Lieutenant Bodack's body-worn camera.[2] On the recording, Critzer stated that she "will fucking

---

[2] The court was only shown footage from timestamps 5:14 to 6:33.

- 2 -

kill [Jason]." When Lieutenant Bodack asked Critzer if she had any legal right to see her children, she deflected, stating that there was no other option to see the children because Jason kept them from her. Critzer berated Jason and indicated that she had just shown him why he should have changed the locks on the house. She stated that Jason was "lucky [she] didn't beat [his] ass with that god damn hammer." She claimed that she entered the home to ask Jason if she could see the children and give them their Christmas presents. She stated that Jason "has stood in the way of keeping her promise to the Lord and if [she has] to take [him] off this Earth to honor [her] promise, [she] will."

Jason testified that the doors and windows to the home were closed but not locked that evening. He admitted that he continuously advanced towards Critzer until she hit him with the hammer. The red marks that appeared on his shoulder blade were not there before the hammer blows. Jason indicated that Critzer did not have the children's cell phone numbers and that the only people with their numbers were his mother and himself.

Critzer testified in her own defense. Critzer asserted that she contacted Jason just before entering the home. She claimed to have called Jason's cell phone to see if they were home. She noted that the call connected but it appeared that no one was able to hear or communicate. When asked when she last communicated with her children other than that call, Critzer stated she did not remember and explained that Jason did not allow her to talk to her children.

Critzer admitted to entering the home, but claimed that she merely intended to give her sons their Christmas presents and then depart to Lynchburg. She noted that she was homeless and the gifts—the hammer and the board—were unwrapped because she was indigent. When Jason saw her, he stood up and "screamed" at her and questioned her. To Critzer, Jason was "[e]xtremely angry, loud" and his vocal tone was "threatening." She claimed she had not anticipated that Jason would react in that manner. As Jason advanced towards Critzer, he would not allow her to answer

his questions and cornered her in the hallway.  Afraid and feeling trapped, Critzer swung at him.  She asserted that Jason never turned away from her when she swung at him.  She stated that he threw her "into the chair and then pulled [her] [o]nto the floor, grabbed the back of [her] hair and beat [her] head into the floor" until Lieutenant Bodack arrived.

At trial, Critzer said that she was uncertain if the hammer was in her hand when she swung at Jason because it and the board had been in her hoodie pocket when she entered the home.  She denied entering the home with the intent to maim, disfigure, disable, or kill Jason.

On cross-examination, Critzer claimed that her son called her and stated that he wanted to see her.  Critzer, however, could not remember when her son asked to see her or if her son invited her to come to the house.  She admitted that Jason's home was not the residence the family shared when she and Jason were married.

After Critzer rested, the Commonwealth recalled Jason.  He testified that when he walked towards Critzer, she also advanced towards him.  Further, he denied keeping their children from Critzer and stated that it was his sons' choice whether to see their mother.

At the conclusion of all the evidence, the trial court convicted Critzer of both charges.  The trial court found that the physical evidence was consistent with Jason's testimony and inconsistent with Critzer's testimony.  The trial court determined that Critzer had not contacted Jason or her sons since the summer and that her testimony that she thought she was invited to the home after the incomplete phone call "ma[de] absolutely no sense."  Furthermore, the court did not "believe that the board or the hammer was a gift."  The court noted that Critzer's demeanor that evening as well as at trial was "bizarre."[3]  The court observed that Critzer yelled her answers from the witness stand and "sound[ed] like somebody out of control."

---

[3] While the trial court articulated its findings of fact, Critzer interrupted the court.  After admonishing Critzer several times to no avail, the trial court found her in contempt of court.

- 4 -

The trial court found that all the doors and windows were shut and it was dark and cold outside when Critzer came into the home uninvited. The trial court credited Jason's testimony that, upon seeing Critzer in the hallway with a wooden board, he got up, stepped around the sofa, and noticed the claw hammer in Critzer's right hand. When Jason was within striking distance, Critzer swung the hammer and struck Jason twice in his left shoulder blade. The pair struggled, overturning the entertainment center and sending the television into the Christmas tree. After Lieutenant Bodack detained Critzer, she threatened to kill Jason multiple times. The trial court stated that it "clearly heard [Critzer] repeatingly [sic] say I'll kill that son of a bitch for not letting me see my son." The court rejected Critzer's claim that she felt threatened that evening. Moreover, the court reasoned that "the hammer was deadly based on the method in which it was used." The trial court sentenced Critzer to two years and three months of active incarceration. Critzer appeals.

ANALYSIS

Challenging the sufficiency of the evidence to sustain her conviction of attempted malicious wounding, Critzer asserts that the evidence failed to prove that she acted with malice or that she possessed the intent to maim, disfigure, disable, or kill Jason. She argues that she acted in self-defense, not with malice, when she struck Jason. Concerning the statutory burglary conviction, she maintains that the Commonwealth failed to prove that she entered the home with criminal intent.[4] Further, Critzer argues that the trial court erred in concluding that she entered the home with a deadly weapon. We disagree with Critzer's contentions.

---

[4] Challenging the statutory burglary conviction, Critzer argues that the evidence failed to prove that she entered the home with the intent to commit malicious wounding. However, Critzer was indicted and convicted for statutory burglary with the intent to commit assault and battery. *See* Code § 18.2-91. Thus, the Commonwealth was not required to prove that Critzer intended to commit malicious wounding when she entered the home—only that she intended to commit the lesser offense of assault and battery.

## I. Sufficiency of the Evidence

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

It is a felony for any person to "maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill." Code § 18.2-51. "An attempt to commit this crime consists of (1) the specific intent to maim, disfigure, disable or kill, and (2) an ineffectual act done towards the crime's completion." *Moody v. Commonwealth*, 28 Va. App. 702, 706 (1998). "Malice inheres in the 'doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). "Whether or not an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence." *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019) (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997)). "Malice may be inferred

from the deliberate use of a deadly weapon." *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000).

"A deadly weapon is one which is likely to produce death or great bodily injury from the manner in which it is used." *Pritchett v. Commonwealth*, 219 Va. 927, 929 (1979) (quoting 40 C.J.S. *Homicide* § 25). "[W]hether a weapon is to be regarded as deadly often depends more on the manner in which it has been used than on its intrinsic character." *Id.* (quoting 40 C.J.S. *Homicide* § 25). "Generally, unless a weapon is [p]er se a deadly one, the factfinder should determine whether it, *and the manner of its use*, place it in that category, and the burden of showing these things is upon the Commonwealth." *Id.* (emphasis added); *see also Pannill v. Commonwealth*, 185 Va. 244, 253 (1946) ("[A] weapon may not be *per se* deadly, yet the vicious and cruel use of it may be the determinative factor in pronouncing it deadly.").

Under Code § 18.2-90, it is unlawful to "enter[] without breaking" a dwelling house in the nighttime. "[I]f the person was armed with a deadly weapon at the time of such entry, he shall be guilty of a Class 2 felony." Code § 18.2-91. "If any person commits any of the acts mentioned in § 18.2-90 . . . with intent to commit assault and battery, he shall be guilty of statutory burglary . . . ." Code § 18.2-91. "When an unlawful entry is made into the dwelling of another, the presumption is that the entry is made for an unlawful purpose." *Scott v. Commonwealth*, 228 Va. 519, 524 (1984). "The specific purpose, meaning specific intent, with which such an entry is made may be inferred from the surrounding facts and circumstances." *Id.* Intent may also be inferred from "the actions of the accused and any statements made by [her]," *Carter v. Commonwealth*, 280 Va. 100, 105 (2010), including the accused's "conduct and statements '*after* the events that constitute the charged crime,'" *Choon Poong Lee v. Commonwealth*, 68 Va. App. 313, 319 (2017) (quoting *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011)).

In finding Critzer guilty, the trial court accepted the Commonwealth's evidence and rejected Critzer's testimony that she entered the home without criminal intent and only to give her children presents. "The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). Additionally, "[t]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000) (quoting *Fisher v. Commonwealth*, 228 Va. 296, 299 (1984)). "In all other cases, we must defer to the conclusions of 'the fact finder[,] who has the opportunity of seeing and hearing the witnesses.'" *Id.* (alteration in original) (quoting *Schneider v. Commonwealth*, 230 Va. 379, 382 (1985)). Indeed, the trial court was "entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused [wa]s lying to conceal h[er] guilt." *Washington v. Commonwealth*, 75 Va. App. 606, 616 (2022) (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011)).

The Commonwealth's evidence established that Critzer, carrying a claw hammer and a broken board, entered the home uninvited. Jason, upon seeing Critzer, moved towards her as she advanced towards him. Critzer struck Jason twice with the hammer, leaving marks on his shoulder blade. A struggle ensued. When Lieutenant Bodack arrived, he found the pair on the living room floor. After being separated from Jason and placed in handcuffs, Critzer repeatedly threatened Jason, thus demonstrating that she acted with malice and with the intent to wound Jason when she attacked him with the hammer. Critzer indicated several times that she would kill Jason if he continued to prevent her from seeing her children. Further, her statements that

she had shown Jason why he should have changed the locks implied that she entered the home uninvited.

As previously noted, the manner in which an implement is used determines whether it is a deadly weapon. Critzer struck Jason with the claw hammer twice, leaving red marks on his shoulder blade. Considering how she used it to attack Jason, the trial court could find that the hammer Critzer used was a deadly weapon and thus infer that she acted with malice.

The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Critzer was guilty of attempted malicious wounding and statutory burglary while armed with a deadly weapon.

## II. Self-Defense

Critzer asserts that the trial court erred in rejecting her claim of self-defense. "Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about h[er] guilt. Whether an accused proves circumstances sufficient to create a reasonable doubt that [s]he acted in self-defense is a question of fact." *Hughes v. Commonwealth*, 39 Va. App. 448, 464 (2002) (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). "A claim of self-defense may be either justifiable or excusable; if it is either, the accused is entitled to an acquittal." *Lynn v. Commonwealth*, 27 Va. App. 336, 353 (1998), *aff'd*, 257 Va. 239 (1999).

Here, the record establishes that the trial court considered and rejected Critzer's self-defense theory. As noted above, the trial court found that her testimony was inconsistent with the physical evidence and that she was incredible. Critzer was unable to recall important facts, such as whether the hammer and board were in the same hand, different hands, or in her hands at all. Further, she could not remember when or whether her son had invited her to the

home.  Finally, the trial court rejected Critzer's claim that she felt threatened as Jason approached her.

Critzer appeared in Jason's home uninvited.  As she approached him in the living room, he got up and moved in her direction.  But there was no indication that Jason threatened Critzer.  Rather than retreat, Critzer attacked Jason with the claw hammer.  The evidence supports the trial court's finding that Critzer did not act in self-defense, and thus we do not disturb the trial court's decision.

## CONCLUSION

The evidence was sufficient to support Critzer's convictions of attempted malicious wounding and statutory burglary with a deadly weapon.  Accordingly, we affirm the trial court's judgment, but remand the matter for correction of the conviction order and the final sentencing order to reflect that Critzer was convicted of attempted malicious wounding.

*Affirmed and remanded.*