COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Athey and Causey
Argued at Alexandria, Virginia


ABAL COURTHOUSE, LLC, d/b/a
 CHERCHER ETHIOPIAN RESTAURANT AND CAFÉ

v.      Record No. 2009-22-4

2000 COURTHOUSE, LLC                                    MEMORANDUM OPINION* BY
                                                                           JUDGE DORIS HENDERSON CAUSEY
2000 COURTHOUSE, LLC                                              JUNE 25, 2024

v.      Record No. 1657-22-4

ABAL COURTHOUSE, LLC, d/b/a
 CHERCHER ETHIOPIAN RESTAURANT AND CAFÉ


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel S. Fiore, II, Judge

David Hilton Wise (Joseph M. Langone; Michael E. Veve; David A.
Dopsovic; Therman A. Baker, Jr.; Wise Law Firm, PLC; Lasa,
Monroig & Veve, LLP; Baker & Associates, PC, on briefs), for Abal
Courthouse, LLC.

S. Scott Morrison (Joseph F. Fiorill; Corey S. Peterson; Katten
Muchin Rosenman LLP, on briefs), for 2000 Courthouse, LLC.


In this consolidated appeal,[1] Abal Courthouse ("Abal"), the tenant, contests the circuit

court's judgment for 2000 Courthouse ("2000"), the landlord, in 2000's suit to recover rent,

possession of the rental property, and damages after Abal's breach of the lease agreement. Abal

contends that the circuit court erred in its interpretation of the lease agreement. It argues that the

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Because the facts and issues are related, we combine these appeals for purposes of
decision but do not formally consolidate them.

circuit court erred in finding that the condition precedent triggering Abal's duty to pay rent, the installation of a kitchen appliance called a scrubber, occurred. Accordingly, Abal argues that the circuit court erred in finding that Abal had breached the agreement by not paying rent. Abal also argues that the circuit court erred in excluding certain evidence. 2000 appeals the circuit court's denial of its request for attorney fees related to this litigation.

We affirm the circuit court's judgment that Abal breached the lease agreement because the contract unambiguously defines when the condition precedent triggering Abal's rent obligations has occurred, and the evidence sufficiently supports the circuit court's judgment that the condition precedent did occur. We also conclude that the circuit court did not err in excluding evidence because such evidence was either cumulative, irrelevant, or expert testimony not properly disclosed before trial. We affirm the circuit court's denial of 2000's request for attorney fees because 2000 did not meet its burden of establishing that the fees requested were reasonable or that they were incurred to litigate the lease dispute.

BACKGROUND

In March 2017, Abal and 2000 signed a lease that allowed tenant Abal to operate a restaurant on the first floor of a commercial office building. The premises were not suited to operate a restaurant, so the lease provided that the tenant would "develop plans and necessary specifications for completion of Tenant Work," according to a set schedule. If the landlord "approved" the tenant's installation specifications and plans for the scrubber, the landlord was obligated to "pay, directly to the vendor and [t]enant's general contractor . . . , the cost to purchase and install the scrubber." The parties' appeal deals with the interpretation of provisions of the lease related to the installation of a "scrubber," an appliance for the kitchen exhaust system, which would filter smoke and grease from exhaust air. Exhibit B of the original lease is entitled "Work Agreement" and provides the following in the first paragraph:

- 2 -

This Work Agreement sets forth the understandings and agreements of Landlord and Tenant regarding the performance by Tenant of work in and to the Premises from its "as is" condition (subject to completion of the Landlord Improvements[2] set forth in Exhibit B-1 attached hereto) in connection with the preparation of the Premises for Tenant's original occupancy and use (all such work shall be referred to herein as "Tenant Work").

Paragraph/Section 2 of Exhibit B, entitled "Plans and Specifications," provided the following:

It is agreed that Tenant will develop plans and necessary specifications for completion of Tenant Work[.] . . .

. . . Tenant shall deliver to Landlord Tenant's Preliminary Plans (as defined [later]) for the entire Premises[.]

. . . .

. . . Tenant shall deliver to Landlord detailed architectural, mechanical, plumbing and electrical (and structural, if required) working drawings and construction documents for the Tenant Work . . . prepared by Tenant's architects and engineers . . . (the "Construction Documents").

. . . .

The Preliminary Plans and the Construction Documents, as finally approved by both Landlord and Tenant in accordance with the foregoing provisions of this Paragraph 2, shall collectively constitute the "Plans."

---

[2] The "Landlord Improvements" are contained in Exhibit B-1 to the original lease and are as follows:

1. Landlord to construct walls for the Premises (the "Demising Work").
2. Landlord shall bring water service to the Premises and shall install any meters or submeters necessary.
3. Landlord to provide 1.5'' gas line to the Building. Tenant shall be responsible for extending service to the Premises at the Tenant's cost.
4. Landlord will provide Tenant with access to the unused panel in the Garage which offers 300 amps at 480v, 3 phase and will bring electrical service to the Premises.
5. Landlord will provide 4'' sanitary line to the Premises. Tenant shall be responsible for installing the grease interceptor within the Premises at Tenant's cost.

One of the "Construction Documents"[3] included "Mechanical General Notes," including Note 15, which provided the following:

> All new air and refrigerant systems shall be balanced and tested by the contractor upon completion of the project. It shall be established that all equipment is capable of operating at the design capacity and all controls are operating to the satisfaction of the owner. All systems shall be checked for excessive noise or vibration and all such conditions be corrected by the contractor . . . . The contractor shall submit a certified balancing report to the owner upon completion of the project.

Paragraph/Section 6 of Exhibit B originally placed the responsibility of installing the scrubber on Abal, providing that:

> Tenant shall install within the Premises, as part of the Tenant Work, a scrubber for Tenant's kitchen exhaust system sized for a typical 2,400 square foot restaurant. The specifications for the scrubber shall be subject to Landlord's reasonable approval as part of Tenant's Plans. Provided Landlord has approved the specifications for the scrubber in advance, Landlord shall pay, directly to the vendor and Tenant's general contractor . . . , the cost to purchase and install the scrubber promptly after receipt of the invoice therefor.

Exhibit B also specified that:

> Landlord shall not have any liability with respect to the construction or design of the Tenant Work or the Plans, and neither [2000]'s approval of the Plans, nor inspection of the Tenant Work shall . . . constitute any warranty . . . with respect to any aspect of the Tenant Work or construction thereof or with respect to the Tenant Plans or any improvements or equipment shown thereon[.]

Because of delays in the installation of the scrubber, 2000 offered to take on responsibility for purchase and installation of the scrubber. The parties executed an amendment to the lease—the "Second Amendment"—memorializing this change:

> As used herein, the term "Scrubber Work" shall mean the purchase and installation of the scrubber described in Section 6 of Exhibit B

---

[3] This Construction Document was introduced into evidence by 2000. 2000 acknowledged at trial that this document was approved by Arlington County and that it referred to this document in installing the scrubber.

to the Lease, the specifications of which have been finally approved by Landlord and Tenant as part of the Plans (as defined in Exhibit B).

. . . .

**Scrubber Work.**  Notwithstanding anything to the contrary contained in Exhibit B to the Original Lease, the parties agree that Landlord shall perform the Scrubber Work, using Landlord's general contractor, at Landlord's sole cost and expense.  The cost of the Scrubber Work shall not be deducted from the Tenant Work Allowance.

. . . .

Subject to Landlord's obligations with respect to the Scrubber Work pursuant to the terms of this Second Amendment, Tenant hereby acknowledges and agrees that: (i) Landlord has completed the Landlord Improvements (as defined in the Original Lease) in accordance with the terms of the Lease, and (ii) Landlord has no further obligations with respect to the construction of the Landlord Improvements.

The Second Amendment also contained the following provision, related to Abal's rent obligations:

Rent Commencement Date: The date that is sixty (60) days following . . . the date that the Scrubber Work . . . is substantially complete as certified in writing by the contractor installing the scrubber[.]

2000 purchased and installed the scrubber.  2000's contractor who installed the scrubber certified to 2000, in writing, that the "scrubber system is substantially completed and installed to the specifications of the manufacturer and the building plans provided."  Following installation of the scrubber, Abal contacted 2000 about noise issues with the scrubber.  The parties communicated about and attempted to remedy the noise issue with the scrubber, but the issue was never resolved.  Sixty days passed from the date that 2000's contractor certified in writing that the scrubber was substantially complete.  Abal did not commence paying rent, nor did it ever pay rent to 2000.  2000 sued Abal in the Arlington County General District Court for unpaid

- 5 -

rent, possession of the rental property, and damages and attorney fees related to Abal 's breach of the lease agreement. The district court ruled for Abal. 2000 appealed to the Arlington County Circuit Court. 2000 engaged the services of new counsel, Katten Muchin Rosenman LLP, for its appeal in the circuit court. After a two-day bench trial, the circuit court ruled for 2000.

Post trial, the circuit court ordered the parties to submit proposed findings of fact, after consideration of which the circuit court would determine the amount of damages and attorney fees to be awarded to 2000. 2000 submitted a proposed statement of facts. In support of its request for attorney fees, 2000 submitted an affidavit from 2000's parent company's vice president/general counsel and an affidavit from a partner at Katten Muchin Rosenman, with 90 pages of billing records attached. Abal filed its response, contesting the reasonableness of 2000's requested attorney fees. Both parties each filed another reply on the attorney fees issue. The court held a hearing and heard argument on 2000's request for attorney fees.

After considering the parties' arguments and filings, the circuit court made the following ruling from the bench:

> Based on the record, the Court awards the amount of the unpaid rent, late fees, the interest as set by contract. As to the attorney[] fees, the Court finds that the submission is insufficient for a finding of reasonableness or necessity, and for that reason, the fees are denied.

The circuit court entered an order awarding 2000: $353,634.81 for unpaid rent, common area maintenance charges, real estate taxes, and late fees from August 6, 2019, through September 30, 2022; prejudgment interest at the contract rate of 18% in the amount of $89,952.88; post-judgment interest at the contract rate of 18%; and immediate possession of the premises. It denied 2000's "request for attorney[] fees and costs in toto." Abal appeals the circuit court's judgment for 2000. 2000 appeals the denial of its request for attorney fees.

- 6 -

ANALYSIS

I.  Interpretation of Lease Agreement

Many of Abal's assignments of error turn on (1) whether the amended lease is an ambiguous document, allowing the use of parol evidence to interpret it; (2) whether the amended lease placed responsibility for the design of the scrubber on 2000; and (3) the definition of "substantial completion" in the lease amendment. We hold that the amended lease is an unambiguous document and thus parol evidence cannot be used to interpret it.  We also hold that the lease did not place responsibility for design of the scrubber on 2000.  Lastly, we hold that the lease gave the discretion to define the term "substantially complete" to a third party—the contractor who installed the scrubber.

"On appeal, we review a trial court's interpretation of a lease under a de novo standard." *Landmark HHH, LLC v. Gi Hwa Park*, 277 Va. 50, 55 (2009) (quoting *Levisa Coal Co. v. Consolidation Coal Co.*, 276 Va. 44, 57 (2008)).  "Where language is unambiguous, it is inappropriate to resort to extrinsic evidence; an unambiguous document should be given its plain meaning."[4]  *Great Falls Hardware Co. of Reston v. S. Lakes Vill. Ctr. Assocs., Ltd. P'ship*, 238 Va. 123, 125 (1989).  "The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and *courts are bound to say that the parties intended what the written instrument plainly declares.*"  *Id.* at 125-26 (quoting *Wilson v. Holyfield*, 227 Va. 184, 187 (1984)).  "'[W]hen considering the meaning of any part of a contract, we will construe the contract as a whole,' and strive not to 'place emphasis on isolated terms' wrenched from the larger contractual context."  *Cabral v. Cabral*, 62 Va. App. 600, 610 (2013) (first quoting *Doctors Co. v. Women's Healthcare Assocs.*, 285 Va. 566, 572 (2013); and

---

[4] Thus, we cannot consider the extrinsic evidence of the parties' conduct, as Abal urges us to do in assignment of error 2.

- 7 -

then quoting *Quadros & Assocs. v. City of Hampton*, 268 Va. 50, 54 (2004)). "[T]he contract must be read as a single document. Its meaning is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties." *Id.* (quoting *Hale v. Hale*, 42 Va. App. 27, 31 (2003)).

Parties to a contract may condition a party's duty of performance on the satisfaction of a third party, "such as an architect, surveyor[,] or engineer," that the condition precedent occurred. *See* Restatement (Second) of Contracts § 228 (1981). This is so because "[t]hese professionals, even though employed by [one of the parties], are assumed to be capable of independent judgment, free from the selfish interests of [the party]." *See id.*

A. Responsibility for Scrubber Design and Installation[5]

Here, the allocation of Abal's and 2000's responsibilities regarding the scrubber are unambiguously set out within the four corners of the amended lease. The amended lease provides that Abal retained the responsibility for design of the scrubber, while 2000 undertook responsibility for purchase and installation of the scrubber.

Abal concedes that under the lease, before it was amended, Abal "was responsible for the design of the Plans and for the construction of the kitchen exhaust system in accordance with the approved Plans," which includes the scrubber. The amendment to the lease did not reallocate this design responsibility to 2000. The Second Amendment provided that "[n]otwithstanding anything to the contrary contained in Exhibit B to the Original Lease, the parties agree that Landlord shall perform the Scrubber Work, using [2000]'s general contractor, at [2000]'s sole cost and expense." The Second Amendment defined "Scrubber Work" to "mean the purchase and installation of the scrubber described in Section 6 of Exhibit B to the Lease, the

---

[5] This section addresses assignments of error 3 and 12.

specifications of which have been finally approved by Landlord and Tenant as part of the Plans (as defined in Exhibit B)."

Thus, the Second Amendment to the lease did not transfer responsibility for the scrubber design from Abal to 2000. The plain terms of the Second Amendment require 2000 only to "perform the Scrubber Work," which the amendment defines as "the purchase and installation of the scrubber described in Section 6 of Exhibit B to the Lease, the specifications of which have been finally approved by Landlord and Tenant as part of the Plans." The specifications in the Plans do not impose any design responsibility on 2000. Accordingly, under the amended lease, Abal retained responsibility for design of the scrubber while 2000 assumed the responsibility for purchase and installment of the scrubber.

## B. Definition of "Substantially Complete"

The definition of "substantially complete" is also unambiguously set out within the amended lease. The Second Amendment to the lease provides that Abal is to commence paying rent "[t]he date that is sixty (60) days following . . . the date that the Scrubber Work (hereinafter defined) is *substantially complete as certified in writing by the contractor installing the scrubber*." (Emphasis added). The parties were permitted to designate to the contractor who installed the scrubber the responsibility to judge whether the scrubber installation was "substantially complete," and thus the condition precedent had occurred. [6] Thus, we cannot look

---

[6] Abal also argues that the Second Amendment converted the Scrubber Work into a "Landlord Improvement." Abal further argues that the lease required 2000 to "substantially complete" such improvements. Abal seems to argue that the "substantially complete" standard is defined by the "functional test" of when the scrubber is fit for use in a restaurant on the property. Even assuming, arguendo, that Abal is correct that the Scrubber Work became a Landlord Improvement, the Second Amendment already provides the definition of "substantially complete," as we discuss in this section. We interpret a contract term according to the definition it is given in the contract. *See Palmer & Palmer Co., LLC v. Waterfront Marine Constr., Inc.*, 276 Va. 285, 290 (2008) ("A contractual term, *absent a definition in the contract*, is construed according to its usual, ordinary, and popular meaning." (emphasis added)).

beyond the amended lease for the definition of "substantially complete," as Abal asks us to do by looking to the Construction Agreement between 2000 and its contractor.

## II. Sufficiency of Evidence[7]

Many of Abal's assignments of error turn on Abal's allegation that the circuit court erred in finding that 2000 "substantially completed the installation of the Scrubber Work." We disagree, as Abal points to no evidence in the record that 2000 did not substantially complete the installation of the scrubber.

In reviewing the sufficiency of the evidence, "the trial court's judgment will not be disturbed 'unless it is plainly wrong or without evidence to support it.'" *Nolte v. MT Tech. Enters., LLC*, 284 Va. 80, 90 (2012) (quoting *Hedrick v. Commonwealth*, 257 Va. 328, 340 (1999)).

As discussed in the previous section, the Second Amendment provides that the condition precedent triggering Abal's rent obligation is the substantial completion of the scrubber. "A party seeking to recover on a contract right must allege and prove performance of any express conditions precedent upon which his right of recovery depends." *Lerner v. Gudelsky Co.*, 230 Va. 124, 132 (1985). And although the parties may condition the occurrence of a condition precedent on a third party's satisfaction, still, "[a] contract to perform a service necessarily implies a covenant to perform according to prevailing standards of competency; otherwise, performance would have no objective legal measure." *Bruce Farms, Inc. v. Coupe*, 219 Va. 287, 291-92 (1978). Abal claims that 2000 breached its duty to perform the service of installing the scrubber according to prevailing standards of competency. A party who claims breach of contract has the burden of proving "with reasonable certainty" that the defendant caused the damage suffered. *Manchester Oaks Homeowners Ass'n, Inc. v. Batt*, 284 Va. 409, 423 (2012);

---

[7] This section addresses assignments of error 4, 5, 6, 7, 8, 9, 10, and 13.

*Rastek Constr. & Dev. Corp. v. Gen. Land Com. Real Est. Co.*, 294 Va. 416, 430 n.10 (2017) ("[A]s generally true in all contract claims, the burden of proving causation is properly placed on the party claiming the breach."). Thus, here, Abal has the burden to show that the damage it suffered—a faulty scrubber—was caused by 2000's failure to perform the installation to prevailing standards of competency.

Here, the circuit court was not plainly wrong in finding that the condition precedent occurred, triggering Abal's rent obligation. 2000 met its burden to prove occurrence of the condition precedent—that its contractor certified that installation of the scrubber was substantially completed. Abal points to no evidence at all that the scrubber installation fell below prevailing standards of competency and caused the noise issues.[8] Thus, we affirm the

---

[8] Abal contends in assignment of error 1 that

> [t]he [circuit] court erred in interpreting that [2000] had no obligation under the Second Amendment to install the Scrubber Work in compliance with the approved mechanical plans, installation specifications, and conditions placed on the approval of the scrubber design drawings, or to correct any noise problems [with] the scrubber and its associated fan as part of the installation process of the Scrubber Work.

Abal also contends in assignment of error 11 that the circuit court erred in finding that 2000 complied with these installation specifications, which included correcting the excessive noise. These arguments lack merit because, as we hold above, the Second Amendment did not place design responsibility for the scrubber on 2000, and Abal has not met its burden of proving that the excessive noise was due to an installation defect.

As stated above, Abal concedes that under the original lease, Abal was responsible for the design of the scrubber. The specifications in the Construction Documents do not independently assign design responsibility to 2000. Under the original lease, the specifications contained in the Construction Documents set standards for the "Tenant Work," meaning that the specifications applied to work to be performed by Abal. This work originally included both the design *and* installation of the scrubber. Thus, the specification in the Construction Documents that "the contractor" has the duty to correct excessive noise clearly applied only to Abal because Abal had responsibility for both the design *and* installation of the scrubber.

However, the Second Amendment reallocated installation of the scrubber to 2000. The Construction Documents were not correspondingly amended to reflect this change and thus still read as if only one party—Abal—was responsible for both the design and installation of the scrubber. In order for us to give effect to the Second Amendment's reallocation of the

circuit court's finding that the condition precedent—that the scrubber installation was substantially completed as certified by 2000's contractor—occurred, triggering Abal's rent obligation.

### III. Admissibility of Evidence

#### A. Email Exhibit[9]

Abal argues that the circuit court erred in excluding an email drafted by one of its lawyers to 2000. Abal argues that either the statement was not offered for the truth of the matter asserted, and thus was not hearsay, or that if it was hearsay, it fell under the business records exception to the hearsay rule. We conclude that even if the email was non-hearsay, the circuit court properly excluded the email as cumulative evidence.

"[T]he exclusion by the trial court of relevant evidence does not constitute reversible error if that evidence is merely cumulative." *May v. Caruso*, 264 Va. 358, 363 (2002) (concluding that circuit court did not err in excluding medical records that "would not have substantially assisted the jury in weighing the credibility of [the defendant] or otherwise to resolve any *disputed* issue of fact" (emphasis added)).

---

installation of the scrubber to 2000, we construe the Second Amendment as imposing on 2000 only those specifications and errors that relate to installation of the scrubber. *Worsham v. Worsham*, 74 Va. App. 151, 167-68 (2022) ("'[E]very word, clause, and provision of the [contract] "should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention . . . expressed"' by the parties." (alterations in original)). Thus, if the noise issue with the scrubber was caused by an installation issue, 2000's contractor would be responsible for correcting it. In contrast, if the noise issue was due to a design defect, Abal would be responsible for remedying the issue.

Abal alleges only that the scrubber noise is excessive. It has not met its burden to prove that the noise issues with the scrubber were *caused by* an installation, as opposed to design, defect. *Manchester Oaks Homeowners Ass'n*, 284 Va. at 423 (concluding that a party who claims breach of contract has the burden of proving "with reasonable certainty" that the defendant caused the damage suffered). Thus, we reject Abal's arguments that the circuit court erred in finding that 2000 had no obligation to comply with specifications in the Construction Documents and that it did not satisfy any such obligations.

[9] This section addresses assignment of error 14.

Here, assuming, without deciding, that the email was relevant evidence and non-hearsay, we conclude that the circuit court did not err in excluding this email because it was cumulative and would not have substantially assisted the factfinder in resolving any disputed issue of fact. The excluded email, drafted by Abal's attorney, asks 2000 to "[p]lease fix [its] installation of the scrubber that [it] . . . required to be installed." It informs 2000 that Abal "is unable to open and do business until [2000] fix[es] this." At trial, Abal contended that its purpose in admitting the email was to establish that it had put 2000 on notice that it objected to commencement of its rent obligation because there was a problem with the scrubber. The fact that there was an issue with the scrubber is undisputed. Abal's objection to the commencement of its rent obligation is also undisputed—the main issues at trial were whether the condition precedent triggering Abal's rent obligation occurred. Abal's position at trial and on appeal is that this condition precedent never occurred and it disagrees with the rent commencement date set by 2000. Admission of the email would not have substantially helped the factfinder resolve a material, disputed issue. Thus, the circuit court did not err in excluding it.

## B. Expert Testimony[10]

Abal also argues that the circuit court erred in precluding Alex Shojaei's expert testimony. We conclude that the circuit court properly excluded this testimony because it was not relevant. To the extent any portions of such testimony were relevant, we conclude the circuit court did not err in excluding the parts Abal sought to admit because they were not properly disclosed in discovery.

The circuit court ruled that the contract unambiguously gave Abal responsibility for design of the scrubber. Thus, the relevant issue at this point of the trial was whether 2000's installation of the scrubber caused the noise from the scrubber to exceed permissible noise levels.

---

[10] This section addresses assignment of error 15.

Accordingly, the circuit court ruled that Shojaei's expert designation was not relevant because he did not opine whether 2000 improperly installed the scrubber. It also ruled that to the extent Abal argued that Shojaei's testimony would opine on this issue, such testimony was inadmissible because it was not disclosed in the expert designation. We agree with the circuit court's ruling.

"Generally, a litigant is 'entitled to introduce all competent, material, and relevant evidence tending to prove or disprove any *material issue* raised, unless the evidence violates a specific rule of admissibility.'" *Kilpatrick v. Commonwealth*, 73 Va. App. 172, 189 (2021) (emphasis added) (quoting *Lee v. Commonwealth*, 68 Va. App. 313, 318 (2017)). We "appl[y] an 'abuse of discretion standard when reviewing a trial court's decision to admit expert opinion testimony.'" *Online Res. Corp. v. Lawlor*, 285 Va. 40, 59 (2013) (quoting *CNH Am. LLC v. Smith*, 281 Va. 60, 66 (2011)). We evaluate whether expert testimony on a certain topic is admissible under Rule 4:1(b)(4)(A)(i). Rule 4:1(b)(4)(A)(i) provides that:

> A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

"When applying Rule 4:1(b)(4)(A)(i), this Court begins by 'determining whether the opinion at issue was disclosed in any form.'" *Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 281 Va. 561, 576 (2011) (quoting *John Crane, Inc. v. Jones*, 274 Va. 581, 591 (2007)). "[T]he purpose of Rule 4:1(b)(4)(A)(i) . . . is to 'allow the litigants to discover the expert witnesses' opinions in preparation for trial.'" *Id.* (quoting *Woodbury v. Courtney*, 239 Va. 651, 654 (1990)).

Based on our holding above, the circuit court is correct that the contract unambiguously places design responsibility for the scrubber on Abal and responsibility for installation of the scrubber on 2000. Thus, the principal fact in issue is whether a defect in 2000's installation of

the scrubber, a defect in Abal's design of the scrubber, or another related component caused the noise. Much of Shojaei's expert report concluded that Halton, not Abal, designed the scrubber and that 2000 assumed some design responsibility for the scrubber. The circuit court was correct in concluding that this opinion was not relevant given that under the contract, Abal, not 2000, ultimately had responsibility for design of the scrubber, even if Abal outsourced this responsibility to Halton, and that the contract never shifted this responsibility to 2000.

The rest of Shojaei's report found that "[Abal]'s installation of the scrubber was not substantially complete because the kitchen exhaust system did not comply with the Arlington County noise ordinance as confirmed by the various post-installation reports commissioned by . . . [2000] and referenced in [Abal]'s expert report." Shojaei never stated that 2000 improperly installed the scrubber, resulting in excessive noise. Further, in the report, Shojaei noted that he "accept[s] the assumption of [2000]'s expert engineer that the exhaust fan is creating the excessive noise (as distinct from the scrubber unit itself)." The plain language of the contract did not place responsibility for installation of the fan on 2000. Even if installation of the fan were encompassed by the "Scrubber Work," again, Shojaei never concluded that installation of the fan caused the excessive noise. 2000 does not dispute the existence of excessive noise coming from the scrubber unit or kitchen exhaust system more broadly. As stated before, the fact at issue was what caused the excessive noise. Thus, Shojaei's report did not have any tendency to make a material fact in issue more or less probable. Accordingly, the circuit court did not err in excluding it.

To the extent Abal argued at trial that Shojaei would have testified that 2000 improperly installed the scrubber, such expert opinion was not properly disclosed under Rule 4:1(b)(4)(A)(i). As stated, Shojaei's report does not opine at all that 2000's contractor improperly installed the scrubber. Thus, this report does not "state the substance of the facts and opinions to which

- 15 -

[Shojaei was] expected to testify." Accordingly, the circuit court properly excluded any expert testimony from Shojaei on this matter.

## IV. Attorney Fees

"We review an award of attorney[] fees for abuse of discretion." *Lambert v. Sea Oats Condo. Ass'n*, 293 Va. 245, 252 (2017). "There is no general requirement that trial courts must state for the record the reasons underlying their decisions." *Shannon v. Commonwealth*, 289 Va. 203, 206 (2015).

"Under the so-called 'American rule,' a prevailing party generally cannot recover attorney[] fees from the losing party." *Ulloa v. QSP, Inc.*, 271 Va. 72, 81 (2006) (quoting *Lee v. Mulford*, 269 Va. 562, 565 (2005)). "However, parties are free to draft and adopt contractual provisions *shifting the responsibility for attorney[] fees to the losing party* in a contract dispute." *Id.* (emphasis added). When seeking to recover attorney fees based on a contract provision, "a party is not entitled to recover fees for work performed on unsuccessful claims." *Id.* at 76, 82 (concluding that even when contract provision obligated defendant to be responsible for all attorney fees incurred by plaintiff "*by reason of any action relating to this Agreement*," the plaintiff was "not entitled to recover fees for work performed on unsuccessful claims"). "Successful" claims, for the purposes of an award of attorney fees, do not include claims that are non-suited or dismissed. *See W. Square, L.L.C. v. Commun. Techs.*, 274 Va. 425, 430, 435-36 (2007) (concluding that "the burden to specify attorney[] fees associated with a particular claim for which an award of attorney[] fees is allowed applies with equal force to a request for an award of costs and expenses" and that "West Square did not 'establish to a reasonable degree of specificity' what portion of those expenses were incurred with regard to the lease dispute, *as opposed to the non-suited claims*" (emphasis added)); *Chase v. DaimlerChrysler Corp.*, 266 Va.

544, 546-49 (2003) (concluding that the party who settled claim was not a "successful" party entitled to attorney fees under Code § 59.1-207.14).

"A party requesting an award of attorney's fees must establish a prima facie case that the fees requested are reasonable." *Schlegel v. Bank of Am., N.A.*, 271 Va. 542, 556 (2006). The party "must 'establish to a reasonable degree of specificity' that the attorney fees sought were incurred to litigate issues arising under the contract containing the fee-shifting provision." *Worsham v. Worsham*, 74 Va. App. 151, 179 (2022) (quoting *W. Square*, 274 Va. at 435-36). Expert testimony about the reasonableness of attorney fees "is not required in every case." *Tazewell Oil Co. v. United Va. Bank/Crestar Bank*, 243 Va. 94, 112 (1992).

"In deciding whether a party has shown the reasonableness of the fees, the fact finder may consider" the *Chawla* factors: (1) "the time and effort expended by the attorney"; (2) the nature of the services rendered"; (3) "the complexity of the services"; (4) "the value of the services to the client"; (5) "the results obtained"; (6) "whether the fees incurred were consistent with those generally charged for similar services"; and (7) "whether the services were necessary and appropriate." *Schlegel*, 271 Va. at 556 (quoting *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 623 (1998)). "[A] fact-finder is not required to consider all of the[se] factors." *Portsmouth 2175 Elmhurst, LLC v. City of Portsmouth*, 298 Va. 310, 334 (2020). The fact finder need not consider all these factors "in every situation." *W. Square*, 274 Va. at 434. "[W]hen a litigant seeks to pass along to an adversary the cost of attorney's fees, whether pursuant to a statute or a contract, *a reviewing court must satisfy itself* that the fees sought are reasonable." *Portsmouth 2175 Elmhurst*, 298 Va. at 334 (emphasis added).

Abal does not contest that the lease entitles 2000 to "reasonable" attorney fees but it argues that 2000 has not met its evidentiary burden in showing the reasonableness of its claimed fees under the *Chawla* factors.

We conclude that the circuit court did not abuse its discretion in concluding that 2000 failed to establish that the requested attorney fees were reasonable or that, to a reasonable degree of specificity, all of the fees it requested were incurred to litigate issues arising under the lease. 2000 submitted an affidavit from a partner at Katten Muchin Rosenman, detailing the personnel who worked on the case; stating that the rates charged by the firm "are consistent with those generally charged by similar law firms for similar services, and customary of those previously charged to [2000] and currently charged to other local clients"; summarizing the work performed on the case; affirming that the firm spent over 1,000 hours on the case; and affirming that it was the partner's "opinion that these costs and fees are an accurate, fair, and reasonable measure of the expenses incurred." 2000 attached 90 pages of billing records to this affidavit. These records were redacted such that only the following relevant information was visible: a general description of the task performed—e.g. "[e]xchange emails," "[c]onference call"; the name of the firm employee who completed the task; the date the task was completed; the amount of hours billed; and that the listed tasks were completed for the matter "CherCher Ethopian Restaurant & Café" (the alternate name for Abal). Other than this information, no details about the nature of the tasks can be seen. 2000 also submitted an affidavit from 2000's parent company's vice president/general counsel, affirming that "[s]ince August 2021, [2000] has incurred $925,379.91 in attorney[] fees and costs related to its efforts to enforce [Abal]'s obligations under the Lease," and that the invoices " are true and accurate copies of invoices received and paid by [2000] for these attorney[] fees and costs." The redactions did not allow the circuit court to determine the reasonableness of the requested fees and whether they were incurred to litigate issues arising under the lease. *Cf. W. Square*, 274 Va. at 430-31, 433, 435 (concluding that requestor had established that its requested attorney fees were reasonable and necessary when requestor submitted "*detailed* billing records" that allowed the opposing party to review and conduct its

own calculations about which activities were reasonably related to the litigation (emphasis added)); *Tazewell Oil Co.*, 243 Va. at 111 (concluding that circuit court did not err in determining the amount of attorney fees when requestor submitted "almost 300 pages of contemporaneous time records *detailing the activities* for which fees were sought"); *Denton v. Browntown Valley Assocs.*, 294 Va. 76, 88-90 (2017) (concluding that circuit court did not err in determining the amount of attorney fees when requestor's expert "testified that he had examined every billing entry in BVA's affidavit and invoices," "taken in context, *each entry adequately described the related work performed*," and "*there was no unreasonable duplication*" in the performed work (emphases added)). Thus, we conclude that the circuit court did not abuse its discretion in finding that 2000 did not meet its evidentiary burden and denying its request for attorney fees.

CONCLUSION

The amended lease unambiguously places responsibility for design of the scrubber on Abal and responsibility for purchase and installation of the scrubber on 2000. The lease also unambiguously defines "substantial[] complet[ion]" of the scrubber as dependent on the certification of completion by a third party, the contractor who installed the scrubber. The evidence sufficiently establishes that the scrubber was substantially completed, triggering Abal's rental obligation. Thus, the circuit court did not err in entering a judgment for 2000. The circuit court also did not err in excluding certain exhibits and testimony that were either cumulative, irrelevant, or improperly disclosed before trial. Lastly, the circuit court did not err in denying 2000's requested attorney fees because 2000 did not establish the reasonableness of the fees or establish to a reasonable degree of specificity that the fees related to the litigation at hand.

*Affirmed.*